LEWISTON AND AUBURN RAILROAD COMPANY

*vs.*

THE GRAND TRUNK RAILWAY COMPANY OF CANADA.

Androscoggin.    Opinion January 1, 1903.

*Lease. Railroads. Tax. Franchise. Contract. Spec. Laws, 1872, c. 88.*
*Stat. 1897, c. 75. R. S., c. 6, §§ 41, 42; c. 51, § 60.*

In determining the intention of the parties to a contract, the interpretation which they themselves by their own acts put upon it is justly entitled to great weight.

The court will not adopt a construction of a contract which does not comport with the interest of either party at the time it is made, unless expressed in clear terms.

The plaintiff agreed with the defendant to construct and build the plaintiff's road as described in its charter in a. substantial and permanent manner,

with suitable station grounds and buildings, and with the necessary sidings at its terminus in Lewiston. By a subsequent indenture the defendant agreed to construct and complete the railroad as already located and partially constructed in a substantial manner, and in all respects in accordance with the previous agreements of the plaintiff. The next day the plaintiff leased the road to the defendant for ninety-nine years with full power to finish and complete it as previously agreed between the parties, and to make and construct any new buildings and tracks necessary and beneficial to be used for the working of the railroad. A rental of nine thousand dollars was to be paid every six months, and the lease provided that all taxes which might lawfully be assessed upon the corporate property or franchise of the lessor, during the period of the lease, might be paid by the lessee and deducted from the rent. Within a few months after the execution of the lease the defendant purchased for ninety-two thousand two hundred and fifteen dollars and ten cents ($92,215.10) certain parcels of land in Lewiston adjoining, but without the location of the plaintiff's road. On this land railroad sidings have been constructed and buildings erected, either leased to the patrons of the road or built upon portions of the premises leased to said patrons. The defendant took the title to this real estate in its own name, enjoys the income from it, and for twenty-three years paid the taxes upon it without making any claim to deduct such taxes from the rent.

*Held;* that construing the two indentures and lease together the defendant was not bound to acquire this land for the plaintiff; that it is not the corporate property of the plaintiff within the true intent and meaning of the lease, and that the taxes so paid cannot be deducted from the rent therein reserved.

For eighteen years the defendant paid taxes lawfully assessed upon the corporate property of the plaintiff, but did not deduct them from the rent.

*Held;* that they cannot be deducted now; that the true intent and meaning of the lease is, that as fast as the taxes are paid they should be deducted from the installment of rent falling due next after such payment, and if not deducted then they cannot be taken out at all.

The defendant has paid an annual franchise tax to the State, assessed upon the basis of the gross earnings of all the leased lines operated by it within the State divided by the total number of miles so operated.

*Held;* that this is not a tax upon the franchises of such leased roads alone; that it is either a tax upon the franchise of the defendant alone, or upon its franchise and the franchise of its leased roads. If the latter, it is incapable of apportionment in this case, and no part of the tax so paid can be deducted from the rent reserved.

On report. Defendant defaulted. Damages to be assessed at nisi prius.

Action by the Lewiston & Auburn Railroad Company, plaintiff,

to recover the sum of eighteen thousand dollars, with interest, alleged to be due from the defendant to the plaintiff as rental for the plaintiff's railroad, station grounds, buildings, sidings, etc., and the property and estate of every kind belonging to the plaintiff, appurtenant to, and designed for the purposes of maintaining and operating the plaintiff's railroad ; the allegation being that the rental is due under the terms of a lease from the Lewiston & Auburn Railroad Company to the Grand Trunk Railway Company, dated March 25, 1874.

The defense was based upon a provision in the lease that "all taxes which may be lawfully assessed upon the property or franchises of the lessors during the period of their lease may be paid by the lessee, and if so paid shall be deducted from the rent herein covenanted to be paid by said lessee." The defendant claimed to have paid taxes and to be entitled to deduction of taxes of the nature referred to in the lease to an amount considerably in excess of any rentals claimed to be due, and that with such deductions made, no balance was due the plaintiffs.

The case appears in the opinion.

*H. W. Oakes, J. A. Pulsifer, F. E. Ludden; W. H. Newell and W. B. Skelton,* for plaintiff.

*C. A. and L. L. Hight; J. W. Symonds, D. W. Snow, C. S. Cook, C. L. Hutchinson,* for defendant.

SITTING : EMERY, STROUT, POWERS, PEABODY, SPEAR, JJ.

POWERS, J.  Assumpsit for two semi-annual installments of rent, of $9000.00 each, from June 10, 1898, to June 10, 1899, under a lease from the plaintiff to the defendant.

The plaintiff corporation was organized under a special charter, Laws of 1872, c. 88, approved Feby. 10, 1872, which empowered it to locate, construct, and complete a railroad from some point in the City of Lewiston to a point of connection with the Atlantic and St. Lawrence Railroad, otherwise known as the Grand Trunk Railroad, within the limits of the City of Auburn. It was also authorized to lease its road, either before or after its completion, upon such terms

as it might be able to agree with the Grand Trunk Railway Company. August 27, 1872, the plaintiff and defendant entered into an indenture, by which, in consideration of the defendants agreeing, among other things, to take a lease of the road when completed for the term of ninety-nine years, the plaintiff agreed to proceed with all diligence to construct and build the road, in a substantial and permanent manner, with suitable station grounds and buildings and with the necessary sidings at the terminus at Lewiston. March 24, 1874, the parties entered into another written agreement by which the defendant, in consideration of $220,000 in cash and bonds paid to it by the plaintiff, agreed to "proceed with all diligence to construct and complete the railroad, known as the Lewiston and Auburn Railroad, as already located and partially constructed, in a substantial manner, and in all respects in accordance with the obligations, promises, and agreements" of the plaintiff contained in the indenture of August 27, 1872, to which reference is expressly made.

The next day, March 25, 1874, the lease was executed. By it the plaintiff leased to the defendant "the railroad of the said Lewiston and Auburn Railroad Company as now chartered, located and constructed, extending from the City of Lewiston to its point of junction with the Atlantic and St. Lawrence Railroad in the City of Auburn, together with all its station grounds and buildings, and all its rights of way and other easements and rights, and all the property and estate of every kind belonging to said Lewiston and Auburn Railroad Company, appurtenant to and designed for the purpose of maintaining and operating said railroad, . . . . . with full power and authority to finish and complete said railroad, as heretofore agreed between the respective parties hereto." The lessee was further authorized " to make or construct any new buildings or tracks necessary and beneficial to be used for the working of said railroad." The lease provided that all taxes which might lawfully be assessed upon the corporate property or franchise of the lessor during the period of the lease, might be paid by the lessee ; and if so paid they should be deducted from the rent covenanted to be paid by the lessee.

Immediately upon the execution of the lease the Grand Trunk Railway Company took possession of the property and franchises of the Lewiston and Auburn Railroad Company, and proceeded to construct and complete said railway, in accordance with the agreement and obligation existing between the parties. While the work of construction was in progress, and before the completion of the road, the Grand Trunk Railway Company on July 17, 1874, purchased for the sum of $2215.10 certain parcels of land, and on November 20, 1874, another parcel of land for the sum of $90,000.00, all situated in the City of Lewiston adjoining the original location of the Lewiston and Auburn Railroad Company. The defendant took and still retains the title to all land so purchased. On this land certain railroad sidings have been constructed, and certain buildings erected. Some of these buildings have been built by the defendant and leased to the patrons of its leased road, the Lewiston and Auburn Railroad; others have been built by the patrons of said leased road upon portions of said premises leased to them by the defendant. The lease and the two written contracts named are all parts of the same transaction, and are to be construed together.

I. During the period of the lease, and previous to the date of the writ, the defendant has paid taxes to the amount of $31,427.75, legally assessed by the City of Lewiston, from 1875 to 1898 inclusive, upon the land so purchased in July and November, 1874. These taxes the defendant claims the right to deduct from any rental accruing under the lease. The question is, are they taxes upon the corporate property of the plaintiff. In other words, is the land so purchased by the defendant, the title to which is now held by it, and of which it has the exclusive use, benefit, and control, the corporate property of the plaintiff within the true intent and meaning of the lease. We cannot believe that such was the intention of the parties. It is true that by the indenture of Aug. 27, 1872, the plaintiff agreed to construct and build the road, with suitable station grounds and buildings, and with the necessary sidings at the terminus at Lewiston, and that it was necessary to acquire a part at least of the land purchased in order to provide suitable station grounds and

necessary sidings and terminal facilities. When, however, this obligation to so construct and complete the road passed from the plaintiff to the defendant, as it did by the indenture of March 24, 1874, it was therein confined to the road "as already located and partially constructed." In the first indenture there is no reference to any location, and being executed but a few months after the granting of the charter, it is probable that none had been made. The road is therein described in general terms, following the language of the charter, which at that time afforded the best and only description of it. When however the second indenture was entered into, the road had been located and partially constructed. By it the defendant was to construct and complete the road, not in the vague and general terms of the charter, but specifically "the Lewiston and Auburn Railroad as now located and partially constructed." These words "as now located" modify all that follows, including the reference to the prior agreement, and must have been used for the purpose of limiting the obligation of the defendant within some bounds capable of being readily ascertained and accurately defined. If not so intended they are meaningless. The construction contended for by the defendant wholly ignores them, and makes its obligation apply to the road as described in the prior agreement. The same may be said of the lease. It is "the railroad of the said Lewiston and Auburn Company as now chartered, located and constructed" that is leased to the defendant. There is no claim that the lands purchased are within the location of the plaintiff's railroad, or covered by any plans for its construction and completion in existence at the time that the lease was executed.

Again, it is difficult to believe that the parties ever understood or intended that the defendant was bound to acquire for the plaintiff land of the value of $92,000.00. If such an onerous obligation were intended to be imposed, we should expect to find it set forth in clear and specific terms, and not left to inference from general language relating to other subjects. By giving force to the words "as already located" the rights and duties of the parties become fixed, certain, definite, the very object we have no doubt for which the words were used. By disregarding them, and adopting the construc-

tion for which the defendant contends, its obligations would be vague, uncertain, indeterminate, a fruitful source of litigation, the very things which such solemn indentures are intended to avoid.

Perhaps, however, the most satisfactory as it is the most conclusive answer to the defendant's contention is found in its own conduct. In determining the intention of the parties to a contract, the interpretation which they themselves by their own acts put upon it is justly held entitled to great weight. The defendant purchased the land with its own money. It took and still retains the title in its own name. For twenty-three years it paid taxes upon this land, aggregating in all nearly thirty thousand dollars, without making any claim that it was entitled to have them deducted from the rental under the lease. The first tax was assessed in 1875. The terms of the contract must then have been fresh in the minds of the parties. Yet this claim was allowed to slumber for twenty-three years, until the amount paid in taxes on the property aggregated many times the amount of the semi-annual rental. Such conduct can be accounted for on only one rational theory, that the parties never intended that this land should be considered the corporate property of the plaintiff within the true intent and meaning of the lease.

II. It is admitted that from 1880 to 1898 inclusive, the defendant paid annual taxes lawfully assessed by the City of Auburn upon the corporate property of the plaintiff to the amount of $1585.25. The defendant claims that it should be permitted now to deduct these taxes, that its right to make such deduction is a continuing one, and may be exercised at any time during the period of the lease. We do not think such was the intention of the parties. They must have known that the taxes would be assessed and payable annually. The lease states that if the taxes are paid by the lessee they "shall be deducted from the rent herein covenanted to be paid by said lessee," and the lessee covenants to pay the rent semi-annually. We think this plainly imports that as fast as the taxes were paid they should be deducted from the installment of rent falling due next after such payment, and if not deducted then they could not be taken out at all. The defendant could have desired at the time no other contract,

for the sooner the tax was deducted the better it would be for the lessee. The plaintiff must have desired and intended to secure from the rental some kind of a fixed and certain income for its stockholders. The lease was for ninety-nine years, and if the taxes could be allowed to accumulate for half a century more or less, and be deducted any time at the will and pleasure of the lessee, it is evident that such great uncertainty in regard to the amount to be received on any pay day, in fact in time as to whether anything at all would be received at the time for the next semi-annual payment of rent, would most seriously and injuriously affect the market value of the defendant's stock. Such an intention, which does not comport with the interest of either party to the lease at the time it was executed, should be expressed in clear terms. It cannot be deduced from the language here used. The case does not clearly show whether any of these taxes were paid after the last payment of rent was made on June 10, 1898. If so, they should be deducted from the amount of the rental which fell due next after this payment.

III. From 1889 to 1893, the State assessed a franchise tax against the plaintiff corporation, which was paid by the defendant. The construction already given to the lease above, in regard to the taxes in Auburn, renders it unnecessary to determine whether this tax was lawfully assessed. Not having been deducted from the rental falling due next after their payment they cannot be deducted now.

From 1894 to 1898, both inclusive, the State tax has been assessed directly against and paid by the defendant. In making up the taxes for these years the gross earnings of all the lines operated by the Grand Trunk in this State, the Atlantic and St. Lawrence Railroad, the Norway Branch Railroad, and the plaintiff's road, have been taken together, and divided by their total mileage in Maine, to get the gross earnings per mile upon which to base the tax.

The question presented is, whether the defendant's proportionate part of the tax constitutes a tax upon its franchise within the intent and meaning of the lease. It is settled that the tax is a franchise tax. *State* v. *M. C. R. R. Co.*, 74 Maine, 376; *Maine* v. *Grand*

*Trunk Ry. Co.*, 142 U. S. 217. Whose franchise is taxed, that of the lessor or of the lessee, of the plaintiff who owns the road, or of the defendant who operates it? Under the statute the tax can only be assessed against the corporation, person or association operating the road. "Every corporation, person or association, operating any railroad in the State under lease or otherwise, shall pay to the Treasurer of the State for the use of the State, an annual excise tax, for the privilege of exercising its franchises and the franchises of its leased roads in the State." R. S., c. 6, § 41; Laws of 1897, c. 75. This tax was assessed against the corporation operating the road "for the privilege of exercising its franchises and the franchises of its leased roads." It is as plain as language can make it that this is not a tax upon the franchises of the leased road alone. The most that can be contended for is, that it is a tax upon the franchises of both the lessor and the lessee, because the tax is assessed for the privilege of exercising the franchises of both. By what rule can it be apportioned in the present case? Not pro rata by the mileage, for upon that basis, after deducting the tax upon franchises of the plaintiff, the Atlantic and St. Lawrence Railroad, and the Norway Branch Railway, no tax would remain against the Grand Trunk for the privilege of exercising its franchises. Neither would it be just that the tax upon the franchise of one road should be increased or diminished, as would be the case here, by the amount of business done by other roads, in which it has no interest and over which it has no control, simply because they are all operated by the same lessee. The manner in which the amount of the tax is determined precludes the conclusion that the franchises of the lessor and lessee are or can be taxed separately. Every railroad corporation must annually make a return to the railroad commissioners "of its operations." R. S., c. 51, § 60. Its gross transportation receipts thus returned are to be divided by "the number of miles of railroad operated," R. S., c. 6, § 42, and from the result thus obtained the amount of the tax is determined by a scale of varying percentages on the gross receipts per mile operated. No distinction is made between the receipts of one leased line and of another, or between these and those of the operating road. They all go in together to make up the total of gross

receipts, which in. like manner is divided by the total number of miles operated to get the one sum which fixes the rate of taxation. In short, there is but one tax. It is assessed against the operator upon the basis of all its operations on all its operated roads within this State. Where the operator is a corporation it must be regarded either as a tax upon its franchises alone, or as a tax upon its own franchises and those of its leased roads, and in the last case it is incapable of apportionment. In either event the defendant's contention cannot be sustained.

As the case leaves it uncertain whether the defendant has paid any taxes to the City of Auburn since June 10, 1898, and prior to June 10, 1899, which it is entitled to have deducted, the defendant should be defaulted, and damages assessed at nisi prius in accordance with this opinion.

*So ordered.*