EDNA P. TOWNE AND CHARLES E. TOWNE *vs.* PEARL J. LARSON.

York.   Opinion, January 24, 1947.

*Locke, Campbell, Reid & Hebert,*

*Hillard H. Buzzell,* for plaintiffs.

*Titcomb & Siddall,*

*Nathan B. Bidwell,* for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MURCHIE, TOMP-KINS, FELLOWS, JJ.

THAXTER, J. This is an action for breach of contract brought by the vendors of certain real estate and personal property against the vendee. The case was tried before a jury which found for the plaintiffs and assessed damages at $4,000. It is now before this court on exceptions, four in number, and on a motion for a new trial. We shall consider first the fourth exception as this raises the issue which the exceptant treats as the important one.

The plaintiffs, husband and wife, had operated for about fifteen years a summer resort at Kennebunkport. The property included about an acre of land, a store with kitchen equipment, a restaurant, garages, and a cottage with about sixteen rooms. Title to the real estate and at least to some of the equipment was in the name of the wife. The balance of the contents belonged to the husband or to the husband and wife jointly. The defendant, a widow, a resident of Massachusetts, who was the librarian of the Middlesex County Law Library, had spent a number of summers at Kennebunkport and was well acquainted with the property and with its owners. Hearing that they wished to sell, she opened negotiations with them for its purchase. The result of the discussions was a written document drawn up

by the defendant of the following tenor, omitting certain irrelevant interlineations:

"August 23, 1944

We, Charles E. Towne and Edna P. Towne, of Kennebunkport, Maine do hereby acknowledge the receipt of $1.00 (one dollar) from Pearl J. Larson, of Kennebunkport, Maine and Medford, Massachusetts.

The said Charles Towne and Edna Towne do hereby agree to give a clear title to the property consisting of approximately one acre of land at Goose Rocks Beach three buildings and contents hereafter named, contents listed in separate document, to the said Pearl J. Larson, title to pass April 1, 1945 and said Pearl J. Larson agrees to pay the consideration of $22,000 (twenty-two thousand dollars); $250.00 (two-hundred-fifty dollars) to be paid September 15, 1944; the balance of $21,750 (twenty-one-thousand, seven hundred fifty dollars) to be paid when title is passed April 1, 1945.

The property herein named consists of a dwelling house and contents with annex and contents three garages and Ford truck.

Store, fixtures and equipment. Store is to be painted and cleaned within and all equipment cleaned and put in 1st class running condition. All equipment formerly used in the store is to be sold with the store.

Casino with equipment including two bowling alleys and equipment.

Signed and sealed this      Signed  Edna P. Towne
23rd day of August, 1944    Signed  Charles E. Towne
                              Signed  Pearl J. Larson

WITNESS: Emily R. Jones"

No list of contents as referred to in the agreement was ever made. Shortly after the signing of the agreement there was,

however, some discussion as to certain personal belongings that Mrs. Towne wanted to retain. On September 7, 1944, Mrs. Larson in a letter to Mr. Towne asked that the agreement be extended from September 15, 1944 to October 14. On September 19, 1944 she wrote him another letter suggesting that money which she thought was to be available for payment was part of a trust fund and she found that she could not reach it. She suggested the possibility of a different method of payment, or perhaps an entirely different arrangement by which she would share the profits with the then owners. On October 11, 1944, she notified Mr. Towne that she must cancel "our original agreement." In none of these letters, nor in any conversation with the Townes does she claim that she will not go through with the matter because of any indefiniteness in the agreement; nor because of any failure to make up the list of personal property, although in the last letter she does refer to the negotiations being long drawn out. It is obvious from her correspondence that her trouble, and her only trouble, was the financing of her purchase. Sometime after April 1, 1945, the time set for performance, the Townes sold the property to a third party for $18,000. Such in brief are the facts about which there is no essential dispute.

The judge in his charge instructed the jury that the paper signed by the parties was a binding contract to sell real estate and personal property. The defendant excepted to this instruction.

The contention of the defendant is that this document is not a contract but only "a very loosely drawn option to purchase within a specific time upon terms not then agreed upon"; that the minds of the parties really never met on the essential details of the transaction; and that accordingly the judge's definite direction that it did constitute a contract was error.

The writing indicates that the parties did not have an option in mind at all, but were endeavoring to draft an enforceable contract in so far as the data then in their possession permitted.

The presiding justice, having properly as we think, determined that the parties had incorporated in this writing the essential terms of their understanding, was correct in refusing to permit parol evidence to be introduced to vary its terms or to cast doubt on what the writing actually purported to be. *Johnson v. Burnham,* 120 Me., 491, 115 A., 291.

We do not agree with the defendant that because of the indefinite nature of an essential part of the contract the minds of the parties never met. It is true that a contract must be sufficiently definite to enable the court to determine its meaning and fix the legal liability of the parties. *Corthell* v. *Summit Thread Co.,* 132 Me., 94, 167 A., 79, 92 A. L. R., 1391; 12 Am. Jur., 555. But this does not mean that every single detail must be set forth. The court looks to substance rather than to form, and is reluctant to construe a contract so as to render it unenforceable if that result can be avoided. *Spicer* v. *Hincks,* 113 Conn., 366, 155 A., 508; *Middendorf, Williams & Co., Inc.* v. *Alexander Milburn Co.,* 134 Md., 385, 107 A., 7; Williston on Contracts, 1st ed., Vol. 1, Sec. 37; 12 Am. Jur., 556.

The agreement now before us is not rendered so indefinite that the rights of the parties cannot be readily ascertained merely because it contemplates that the contents of the buildings are to be listed. There was no doubt in the defendant's mind as to its meaning; and she never made any such claim as she now asserts prior to the time that suit was brought against her. Her letters written to Mr. Towne show clearly that her failure to carry out her agreement was because of difficulty in financing the purchase and not because of any misunderstanding of its terms. The court is not disposed to find an agreement vague or indefinite which was precise and clear to the parties who signed it.

We think that the instruction of the presiding justice was correct that there was here a binding contract.

The first exception is without merit. Mrs. Towne was asked what was the fair market value of the property on April 1, 1945.

The question was objected to on the ground that there was no allegation in the writ to justify the question. We are somewhat puzzled, as apparently the presiding justice was, as to the reason for the objection. It seems to us to have been a perfectly proper inquiry.

The second exception is to the refusal of the presiding justice to grant defendant's motion for a mistrial. A colloquy took place between counsel for the plaintiffs and counsel for the defendant over the testimony of Marshall K. Berry, a real estate expert called by the plaintiffs. During the course of the discussion plaintiffs' counsel said: "You can do as you wish relative to his Mr. Berry's testimony; I never saw the man before in my life." Assuming the remark was irrelevant, any possible prejudice from it was negligible and there was no abuse of discretion in denying the motion.

The third exception is to the exclusion of certain evidence relating to the condition of the property in October, 1944. The judge had a discretion to determine whether conditions on that date were such that the opinion of the witness would be at all helpful to the jury. He apparently determined that such opinion would not be. There was no abuse of discretion.

The defendant does not seriously argue that the motion for a new trial should be sustained. We have nevertheless carefully read the evidence and are satisfied that there is sufficient to justify the verdict of the jury.

*Exceptions overruled.*
*Motion overruled.*