**Ruth AULT, formerly Ruth Pakulski**

v.

**John PAKULSKI.**

Supreme Judicial Court of Maine.

Argued Nov. 3, 1986.
Decided Jan. 27, 1987.

Lipman & Parks, William R. Stokes (orally), Robert J. Stolt, Augusta, for plaintiff.

Verrill & Dana, Charles Cragin, Richard N. Bryant (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and CLIFFORD, JJ.

McKUSICK, Chief Justice.

This appeal presents a single and narrow question of contract law. We must decide whether a 1974 agreement made by defendant John Pakulski and plaintiff Ruth Ault, then husband and wife, "to establish a trust for the education of the children" within one year after their divorce is definite and complete enough for a court to enforce against either as a legal obligation. Answering the question in the negative, we set aside the Superior Court's order that Pakulski reimburse Ault for $14,700 that she paid toward the children's education over the intervening nine years.

On November 21, 1974, while a divorce action was pending between them, Ault and Pakulski executed a property settlement

contract. Their divorce action went to judgment in the District Court (Waterville) on January 22, 1975. Nearly nine years later, in November 1983, Ault commenced in the Superior Court (Kennebec County) the present action seeking to enforce against Pakulski two provisions of that 1974 settlement contract: (1) Pakulski's agreement to maintain two specifically identified insurance policies and to keep Ault as beneficiary thereon until she should remarry or die; and (2) a paragraph 5 reading in full as follows:

> The Husband and Wife agree to establish a trust for the education of the children. This trust is to be executed within one year from the date of the divorce judgment, and the cost is to be borne on a percentage basis based on the respective incomes of the Husband and Wife.

On his appeal Pakulski does not attack the Superior Court's order of specific performance of his agreement to maintain the two identified insurance policies with Ault as their beneficiary. Rather, his sole challenge is to the Superior Court's order that he pay $14,700 to Ault to reimburse her for that part of her outlay for their children's education that the court held to be Pakulski's legal obligation under paragraph 5.[1]

At the time of their settlement contract in 1974, two of the couple's four children were over 18 and the other two were 13 and 15 years of age. After the parties signed the settlement contract, they never created any trust fund or at any time discussed the establishment of a trust. Independently from time to time over the years each parent contributed in some part to the schooling of their children. Ault's contributions amounted to at least $20,000, Pakulski's to only $6,470. The children attended Gould Academy in Bethel, University of Maine at Farmington, John Cabot School in Italy, and Kenyon College in Ohio. The Superior Court found that "at times when the salaries of both could be computed," Pakulski, an airline pilot, earned a salary of about four times that of Ault, a school teacher. On that basis the Superior Court assigned to Pakulski legal responsibility for about 80% of the aggregate expenditures by both parents towards their children's education. We vacate that part of the Superior Court's judgment because paragraph 5 of the parties' 1974 settlement contract is so vague and incomplete as to be incapable of judicial enforcement.

Long ago we stated the principle that here controls:

> There is no more settled rule of law applicable to actions based on contracts than that an agreement, in order to be binding, must be sufficiently definite to enable the [c]ourt to determine its exact meaning and fix exactly the legal liability of the parties.

*Corthell v. Summit Thread Co.*, 132 Me. 94, 99, 167 A. 79, 81 (1933). *See also Restatement (Second) of Contracts* § 33(2) (1981). A leading treatise writer has declared epigrammatically: "A court cannot enforce a contract unless it can determine what it is." 1 A. Corbin, *Contracts* § 95, at 394 (1963). Paragraph 5 falls short of that standard.

Paragraph 5 did not specify how the future educational trust was to be funded, implemented, or administered. Whether the parties would fund the trust by each making a single lump sum contribution or by making contributions over a period of time remained to be resolved, as did also the amount of that funding. Whether the parties would share responsibility for managing the trust, or allocate that responsibil-

---

1. Pakulski challenges the enforceability of paragraph 5 solely for lack of definiteness and completeness. He makes no argument that the settlement agreement, which recited that it was "subject to the approval of the court," was unenforceable in absence of that approval. Nor does he argue that the settlement agreement was merged into the divorce judgment by partial incorporation of its terms. *See* H. Clark, *The Law of Domestic Relations in the United States* 562–64 (1968). *Cf. Eatman v. Eatman,* 549 P.2d 389, 391 (Okla.Ct.App.1976) (where settlement agreement made no provision for court approval, incorporation into decree of some terms of the agreement left other terms to be enforced by separate action).

ity to one or the other of them, or appoint an independent trustee was yet to be decided. Whether the term "education" was to encompass college for all or some of the children or only secondary school for the two minors was left to be decided, as was the question whether the children would attend public or more expensive private institutions. Whether the term "children" was to embrace the couple's two children who had already reached 18 or only their minor children was left unspecified.

Paragraph 5 stands in sharp contrast to every other provision of the 1974 settlement contract. All of the other paragraphs, including the insurance provision, stated in precise and complete terms the respective legal obligations of the parties commencing promptly upon the divorce. Paragraph 5 merely expressed a generalized, ill-formed desire purportedly held by both Ault and Pakulski in November 1974 to make in the future some provision for jointly paying in some amount for some education for some or all of their four children. It was nothing more than an "agreement to agree." At most, it was an agreement to confer within a year to negotiate the terms of an arrangement for sharing their children's educational expenses. The Superior Court could order specific performance of paragraph 5 only by supplying, on its own, critical contractual terms as to which the parties never had a meeting of the minds. The judgment here on review violates "the fundamental policy that contracts should be made by the parties, not by the courts, and hence that remedies for breach of contract must have a basis in the agreement of the parties." *Restatement (Second) of Contracts* § 33 comment b (1981).

Whatever moral obligation the parents of the Pakulski children may have had for their education, their agreement in the 1974 property settlement contract to establish in the future a joint trust for that purpose is too indefinite and incomplete to constitute a legal obligation enforceable by one parent against the other.

The entry is:

Vacate the order of the Superior Court granting plaintiff specific performance of paragraph 5 of the settlement contract and requiring defendant to pay $14,700 to plaintiff. As modified, the judgment of the Superior Court is affirmed.

NICHOLS, WATHEN and CLIFFORD, JJ., concurring.

GLASSMAN, Justice, with whom ROBERTS, Justice, joins, dissenting.

I respectfully dissent. The court ignores the general rule that courts will seek to construe contracts to give them meaning rather than to render them unenforceable. *Towne v. Larson,* 142 Me. 301, 305, 51 A.2d 51, 53 (1947). Furthermore, the court has examined the contract language without availing itself of evidence of how the parties themselves understood their obligations under the contract. Faced with the parties' indifference to the contract's uncertainties, interpretation requires greater reliance on their course of performance. *Blue Rock Industries v. Raymond International, Inc.,* 325 A.2d 66, 73 (Me.1974); 3 *Corbin on Contracts* § 558 (1960). Interpretation indicated by acts of the parties is entitled to great weight. *Bar Harbor and Union River Power Co. v. The Foundation Co.,* 129 Me. 81, 86, 149 A. 801, 803 (1930); *Lewiston and Auburn R.R. Co. v. Grand Trunk Ry. Co.,* 97 Me. 261, 267, 54 A. 750, 752 (1903). Application of these principles allows enforcement of the contract to the limited extent requested by the plaintiff in this case.

Consideration of the terms that the court holds too vague for enforcement reveals that none defy reasonable interpretation. Questions concerning funding and management of the trust are not pertinent because plaintiff does not seek to establish a trust. The meaning of the term "education"—whether it encompasses college or only secondary schools and whether private or public schools were contemplated—can be ascertained from common rules of construction and from the acts of the parties.

If a contract leaves open a key term, the law invokes the standard of reasonableness, and courts will supply the needed term. *Corthell v. Summit Thread Company*, 132 Me. 94, 99, 167 A. 79, 81 (1933). The Superior Court specifically found that the expenditures for which plaintiff sought reimbursement were "reasonable and appropriate to promote the education of their children." Furthermore, the defendant made no specific objections at the time to any expenditure as unreasonable. He contributed directly to his oldest daughter's tuition at a private college in Italy, thus it is unlikely that he understood his obligations to be limited to public or secondary schools only. Finally, the term "children" can, in this context, only be understood to mean the offspring of the parties resulting from the marriage.

Courts should not deny relief on a contract because of vagueness if the parties' intent can be ascertained. *See Goodyear v. Goodyear*, 257 N.C. 374, 126 S.E.2d 113, 117 (1962) (promise to buy wife "a new automobile" enforced). Here the Superior Court found that the clear intent of the parties was to provide for the education of their children and to apportion the costs according to the respective incomes of the parties. Faced with the limited dispute raised by the plaintiff's unreimbursed expenditures, the trial court had little difficulty effectuating that purpose. I would affirm.