STATE OF MAINE                                                     SUPERIOR COURT
CUMBERLAND, ss                                                    Civil Action
STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

2007 FEB 26  A 10: 07
Docket No. CV-05-389


SMRT, INC.,

    Plaintiff

                                  **DECISION AND ORDER**
v.                            **PLAINTIFF'S MOTION FOR**
                           **PARTIAL SUMMARY JUDGMENT**
JOHN PHILIP REA and
CAROL M. REA,

    Defendants


## I. BEFORE THE COURT

Plaintiff SMRT, Inc. filed a complaint for recoupment, conversion, negligent misrepresentation and breach of contract. The defendants filed an answer with five affirmative defenses and a counterclaim alleging breach of contract. The plaintiffs now seek partial summary judgment on Count I (recoupment / conversion) and on defendants' counterclaim for breach of contract.

## II. BACKGROUND AND PROCEDURAL HISTORY

Both parties are or were involved in architecture firms. All the allegations arise from an agreement between the parties concerning SMRT acquiring part of the Reas' business assets and possible future collaboration between the parties.

Accompanying plaintiff's motion were statements of material fact (PSMF). The Reas' oppose the motion and filed responses to the PSMF and additional statements of material fact (DASMF). SMRT filed a response and answers to the DASMF.

## III. DISCUSSION

### A. Summary Judgment Standard

The court will grant a motion for summary judgment when no genuine issue of material facts exists and any party is entitled to judgment as a matter of law. *Gagnon's Hardware & Furniture v. Michaud*, 1998 ME 265, ¶ 5, 721 A.2d 193, 194; M.R. Civ. P. 56(c). When "determining whether to grant or deny a motion for a summary judgment, the trial court is to consider *only* the portions of the record referred to, and the material facts set forth in the [statement of material facts]." *Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 8, 742 A. 2d 933, 938 (internal quotations omitted) (citations omitted). Finally, the court gives the party opposing a summary judgment the benefit of any inferences that might reasonably be drawn from the facts presented. *Curtis v. Porter*, 2001 ME 158, ¶ 9, 784 A.2d 18, 22.

### B. Facts[1]

SMRT and Rea Associates, an architecture firm owned by the defendants, attempted to enter into an agreement whereby SMRT would acquire some of the Rea Associates business assets. PSMF ¶ 7. During this process the parties executed a Consulting Agreement. Depo. of Carol Rea. Ex. 6. The language of this agreement is one of the sources of contention between the parties in this case.

---

[1] SMRT, Inc. submitted ninety-eight separate statements in its statements of material fact. The law court has stated that, "If a party submits an unnecessarily long, repetitive, or otherwise convoluted statement of material facts that fails to achieve the Rule's requirement of a "separate, short, and concise" statement, the court has the discretion to disregard the statement and deny the motion for summary judgment solely on that basis." *Stanly v. Hancock County Comm'rs*, 2004 ME 157, ¶ 29, 864 A.2d 169, 179. SMRT's statements of material fact do not comply with the letter, nor the spirit of the Law Court's dicta in *Stanley*. Furthermore, SMRT objects and moves to strike defendants' twenty-eight additional statements of material fact for failing to comply with M.R. Civ. P. 56 requirement of "separate, short and concise" paragraphs. In addition to replying to the DASMF, SMRT also filed a separate, thirty-six page commentary on the DASMFs. The result of SMRT's actions is to unnecessarily convolute the summary judgment process and, in this court's view, constitutes an abuse of Rule 56 practice. Because Rule 56 does not provide for filing commentary on statements of material fact this pleading is stricken and has not been disregarded by the court. The court considered the imposition of sanctions, but does not impose them at this time. Counsel are cautioned, however, that sanctions will be imposed for future violations.

## C. Standards for Contract Interpretation

The trier of fact determines if a contract exists and if that contract has been breached. *See Smile, Inc. v. Moosehead Sanitary Dist.*, 649 A.2d 1103, 1105 (Me. 1994); *Vanvoorhees, et al. v. Dodge*, 679 A.2d 1077,1080 (Me. 1996). "The party seeking to enforce the alleged contract ha[s] the burden to establish its existence." *Smile*, 649 A.2d at 1105.

> To establish a legally binding agreement the parties must have mutually assented to be bound by all its material terms; the assent must be manifested in the contract, either expressly or impliedly; and the contract must be sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liabilities of the parties.

*Roy v. Danis*, 553 A.2d 663, 664 (Me. 1989) (citations omitted).

"Preliminary negotiations as to the terms of an agreement do not constitute a contract." *Smile*, 649 A.2d at 1105. Statements of intent that are given as reassurance cannot be construed as a contract because 'an intention to do an act is not an offer to do it . . . a mere expression of intention or general willingness to do something. . . does not amount to an offer.' *Searles v. Trustees of St. Joseph's College, et al.*, 1997 ME 128, ¶ 13, 695 A.2d 1206, 1212 (citing 17A Am. Jur. 2d Contracts ß 43 (1991)). "Under Maine law, 'a reservation to either party of an *unlimited* right to determine the nature and extent of his performance renders his obligation too indefinite for legal enforcement, making it, as it is termed, merely illusory.'" *Millien v. Colby College, et al.*, 2005 ME 66, ¶ 9, 874 A.2d 397, 402 (citing *Corthell v. Summit Thread Co.*, 132 Me. 94, 167 A. 79, 81 (1933). "If a contract leaves open a key term, the law invokes the standard of reasonableness, and courts will supply the needed term." *Corthell, 132 Me. at 99, 167 A. at 81.*

In order for a contract to be enforceable, the agreement must be sufficiently definite to allow a court to determine the "exact meaning and fix exactly the legal liability of the parties." *Ault v. Pakulski*, 520 A.2d 703, 704 (Me. 1987). If

ambiguous, contract interpretation is a determination for the trier of fact. *Lee v. Scotia Prince Cruises LTD.*, 2003 ME 78, ¶ 9, 828, A.2d 210, 213. An ambiguous contract contains language that may be reasonably interpreted in more than one manner. *Id.*

On the other hand, "ambiguities in a contract are to be interpreted against the drafter." *Barrett, et al. v. McDonald Investments, Inc. et al.*, 2005 ME 45, ¶ 15, 870 A.2d 146, 149. Generally, a court "will seek to construe contracts to give them meaning rather than to render them unenforceable." *Towne v. Larson, 142 Me. 301, 305, 51 A.2d 51, 53 (1947).*

"The parol evidence rule operates to exclude from judicial consideration extrinsic evidence offered to alter, augment, or contradict the unambiguous language of an integrated written agreement." *Handy Boat Service, Inc. v. Professional Services, Inc., et al.*, 1998 ME 134, ¶ 11, 711 A.2d 1306, 1308-09. The rule applies when a court finds that the agreement unambiguously integrated the subject matter of the agreement. *Id.*

## D. Discussion

### 1. Plaintiff's Count I and Defendant's Counterclaim

SMRT's motion for summary judgment on Count I of its complaint demands recoupment from the Reas for payments made for transition services on the Wells School District project. The Reas counterclaimed for breach of contract based on the following: (1) the Consulting Agreement section 1(c) and SMRT's failure to negotiate with the Reas on the Wells School District project as provided in the agreement; (2) SMRT's failure to pay the Reas according section 2(c) of the Consulting agreement for projects that the Reas referred to SMRT; (3) SMRT's failure to pay the total architectural fees under sections 2(c) and 2(e) of the contract; and (4) SMRT's failure to pay attorney's

fees arising from a malpractice action against the Reas despite an agreement in the asset purchase agreement that SMRT would provide the Rea's with liability insurance.

## 2. SMRT's Arguments

SMRT argues three points: (1) that the Reas' cannot enforce the section 1(c) of the Consulting Agreement because it contains an unenforceable agreement to negotiate concerning the Wells School District project, if the agreement is enforceable SMRT did not breach, and expectation damages are not appropriate; (2) that the Reas claim that they provided "Transitional Services" under section 2(c) of the agreement is unfounded because the services that the Reas did perform are not "Transitional Services" within the meaning of the contract and, therefore, the Reas are not entitled to payment for services that they failed to render; and (3) the Reas claim that they were underpaid under section 2(a) of the agreement for a portion of the "Architectural Fee" or "Architect's Fee" for work is false because the term "Architect's Fee" does not include reimbursable expenses and the expense that the Reas' claim are owed to them are reimbursable expenses.

## 3. Reas' Arguments

Rea argues: (1) that the parties now disagree concerning the meaning of the terms "total architectural fee," "architectural fee" and the "architect's fee" in the agreement and they were not paid the entire percentage of the fee that they were entitled to under the contract; (2) that SMRT breached its agreement to subcontract work for the Wells School District back to the Reas, and (3) that SMRT is not entitled to recoup money already paid to the Reas as a 5 percent fee under the agreement for transitioning the Wells School District projects to SMRT.

## 4. Analysis

Both parties agree that that SMRT and the Reas entered the Consulting Agreement and are attempting to enforce different provisions of that agreement. PSMF ¶ 9. Neither party disputes the existence of the contract, rather the parties now disagree about the meaning of certain provisions and terms of the contract concerning their obligations under the contract.

### a. Section 1(c) of the Consulting Agreement

Section 1(c) of the Consulting Agreement states:

> The Company [SMRT] shall provide architectural and design services to the Wells school district, provided the school district agrees. In such event, the Company and the Reas agree to negotiate in good faith a subcontract under which Rea Architects will furnish concept design services to the Company. Rea Architects shall also provide such Transitional Services as the Company may reasonably request with respect to the Wells project.

J. P. Rea Depo. Ex. 5. SMRT argues that this provision is unenforceable to the extent that it purports to confer an obligation on SMRT to subcontract with the Reas on the Wells School District project because agreements to agree are unenforceable in Maine. The Reas argue that the provision gives rise to an obligation that SMRT negotiate in good faith with the Reas concerning the Wells School District Project. Both parties agree that there is no binding precedent in Maine concerning agreements to negotiate in good faith and both parties have provided conflicting case law from other jurisdiction concerning such agreements.

Here, the language of the contract is unequivocal, the contract states: "In such event, the Company and the Reas agree to negotiate in good faith a subcontract under which Rea Architects will furnish concept design services to the Company." The language of the contract contains a condition precedent: "in such event," which comes directly after the sentence: "The Company shall provide architectural and design

services to the Wells school district, provided the school district agrees." Since the Company, SMRT, did in fact provide architectural and design services to the Wells school district, the "event" contemplated by the contract language actually occurred. PSMF ¶¶ 52-53.

After that event, the contract states that SMRT and the Reas "agree to negotiate in good faith a subcontract. . . ." This language makes clear that section 2(c) is not merely an agreement to agree, but an agreement to negotiate a future agreement. The Reas could not and are not attempting to enforce this future agreement. The Reas are attempting to obtain damages for the lost opportunity to negotiate such an agreement. That right, the right to negotiate in good faith, is not merely an illusory promise; neither is it a reservation of a performance that is too indefinite for legal enforcement. The exact meaning of the parties' obligations is clear under the contract. If SMRT successfully obtained the Well's project, which they did with the Reas' assistance, they had an obligation to enter into negotiations with the Reas' to subcontract the project. The breach is not a result of the failure to agree to a subcontract, rather it is the fact that SMRT failed to negotiate with the Reas concerning the project and possible future sub-contracts.

SMRT maintains that no breach occurred because the contract did not place an affirmative obligation on SMRT to initiate the negotiations and since the Reas never attempted to initiate negotiations there SMRT did not breach the contract provisions. SMRT then argues that it did not negotiate with the Reas because there was a belief that the Reas were not interested in working on the project. PSMF ¶ 64. The Reas counter that they were not kept up-to-date on information concerning the project. DASMF ¶¶ 122-23. A genuine issue of fact exists concerning if SMRT breached the provision by not initiating negotiations.

The contract is silent on how negotiations were to be initiated, however, the contract did confer an obligation on both sides to enter into negotiations. It is up to a trier of fact to determine if a contract has been breached. The contract is ambiguous concerning who was to initiate negotiations because the contract could reasonably be interpreted to mean both parties, either party, or neither party had a duty to initiate the negotiations. In order to interpret the contract, the parties seek to introduce parol evidence. Since, the provision is ambiguous, parol evidence is appropriate, however, the evidence is conflicting. SMRT seeks to show that they believed the Reas did not wish to negotiate and the Reas seek to show that SMRT did not keep them appraised of developments on the project. These conflicting accounts, raise a genuine issue of material fact concerning the proper interpretation of section 2(c) of the Consulting contract.

**b. Section 2(c) of the Consulting Agreement/ SMRT's Recoupment Claim**

SMRT is attempting to recoup money paid to the Reas under section 2(c) of the Consulting Agreement because they claim that the Reas' provided no transition services and were paid hourly for all services rendered for the Wells project. PSMF ¶¶ 52-54. The Reas' contest this assertion and assert that they did provide such services. Defs.' Responses to the PSMF ¶¶ 52-54. The term "transition services" is defined in a Section 1(a) of the contract as: reviewing with SMRT staff concept designs for all the facilities that are approved and for each project to attend and participate in client meetings for a period of three months after the approval of the project and specifically references several projects, not including the Wells project. However, section 2(c) refers back to section 1(c) concerning payment for transitional services and section 1(c) exclusively deals with the Wells project. The contract is ambiguous on the question of whether the enumerated list of "transitional services" in section 1(a) contains an adequate definition

of "transitional service" for section 1(c) when the contract specifically treats the projects differently. J. P. Rea Depo. Ex. 5.

The term transitional services is vague and susceptible to the meanings given to it by each party. Allowing in contextual evidence under the parol evidence rule, does not aid the court in interpreting the term "transitional services" or indicate what the parties contemplated by using such term. Both parties agree that the projects, which are referred to in section 1(a) of the contract, and the Wells project referred to in section 2(c) and 1(c) of the contract were at different stages and were treated differently under the agreement. PSMF ¶¶ 49-50.

The defendants' assertions that the term "transitional services," activities contemplated by that term would be substantively different for the projects referred to in section 1(a) and the Wells project referred to section 1(c) and at issue in section 2(c) are reasonable. SMRT asserts that the Reas' claim that certain activities are "transitional services" even though they fall outside the definition of "transitional services" in section 1(a) of the agreement, that the Reas were not requested to perform such activities, and that the Reas were already compensated for the activities they performed. The parties have each supplied rational definitions for the term "transitional services" which are entirely different and the correct interpretation of that definition is a determination for the trier of fact.

c.  **Contractual Definition of "Architectural Fee"**

The parties dispute whether the Reas were paid the total amount of the "architectural fee" contemplated in section 2(a) of the contract. Nowhere in the contract is the term "architectural fee" defined and the term does not have a plain or ordinary meaning. The fact that the parties premised payment under the contract on the "architectural fee" indicates that the term is likely specialized or specific to the field of

architecture. Since the parties dispute what is contemplated by the term and have offered reasonably alternative interpretations of the term, the term "architectural fee" is ambiguous. Again, the parties rely on parol evidence which is vastly differing in supporting their own interpretation of the agreement's terms. SMRT asserts that the term is limited to the amount of the fee printed in the Bureau of General Services for the State of Maine's recommended fee schedule. SMRT asserts that an architect is customarily paid 15% of the total fee for the schematic design work. PSMF ¶ 18. The Reas insist that this fee includes reimbursable expenses and, based on their experience in the industry, includes all fees charge on the project. DASMF ¶ 114. There remains a genuine issue of material fact concerning the definition of the term "architectural fee" in the agreement.

### d. Reas' Malpractice Liability

Neither party submitted either facts or arguments on Reas' claim for breach of contract arising out of the claim for attorney's fees from a prior malpractice action and SMRT's alleged agreement to provide liability insurance for the Reas. Consequently, the court declines to rule on this aspect of the Reas' counterclaim.

## IV.    DECISION AND ORDER

The clerk will make the following entry as the Decision and Order of the court:

- Plaintiff's Motion for Partial Summary Judgment is denied.

SO ORDERED.

Dated: February 26, 2007

Thomas E. Delahanty II
Justice, Superior Court

STEPHEN WADE ESQ
SKELTON TAINTOR & ABBOTT
PO BOX 3200
AUBURN ME   04212-3200

SIDNEY THAXTER ESQ
GEORGE LINGE ESQ
CURTIS THAXTER
PO BOX 7320
PORTLAND ME   04112-7320