STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-16-101

RACHEL B. AKIN,

    Plaintiff

v.

AUBURN WATER DISTRICT,

    Defendant.

)
)
)
)
)
)
)
)
)
)

ORDER ON MOTIONS TO
ENFORCE MEDIATION
SETTLEMENT AGREEMENT

Before the Court are Plaintiff Rachel B. Akin ("Akin") and Defendant Auburn Water District's ("AWD") cross-motions to enforce a mediation settlement agreement. A hearing was held on this matter on March 5, 2018. For the following reasons, both parties' motions are denied.

I. Background

On August 15, 2016, Akin filed a Complaint alleging AWD has discharged water, water treatment chemicals, and other pollutants onto Akin's property without permission since 2012. (Pl.'s Compl. ¶ 5.) Akin contends the discharge has flooded her property, causing damage to the property and diminishing its value. (*Id.* ¶ 9.) Plaintiff's Complaint includes counts for statutory and common law trespass, negligence, injunctive relief, and inverse condemnation.

On May 1, 2017, the parties notified the Court that the matter was fully resolved through mediation on April 24, 2017. The Court approved the parties' agreement by order dated May 19, 2017. However, on October 30, 2017, AWD filed its motion to enforce the settlement agreement. In return, on November 20, 2017, Akin filed her motion to enforce the settlement agreement.

The full text of the parties' Mediation Settlement Agreement provides as follows:

1) Defendant to pay Plaintiff $20,000 upon delivery of the signed easement described below.
2) Plaintiff to grant Defendant an easement for the discharge of water in the "new discharge area" as located on the attached map where the southernmost culvert is located.
3) Defendant is to prepare the easement, subject to review of Plaintiff's counsel, including any surveying at its costs.
4) Defendant agrees to submerge the discharge pipe in an appropriate amount of rip rap.
5) Plaintiff will sign a release and dismissal of the pending case with prejudice.

The map referenced in the agreement is an aerial photograph, marked with lines that are presumably property lines, and notations and hand-drawn arrows of unknown origin, one of which points to the "new discharge area."

AWD's motion to enforce generally alleges that following mediation, the parties reached an agreement as to the form and language of the easement and release referenced in the settlement agreement, but Akin unilaterally changed the language of these documents without AWD's consent and then demanded additional monies in return for the execution of AWD's draft of the easement and release. Akin's motion counters that AWD's version of the easement does not comply with the language of the settlement agreement, as it permits AWD to discharge water in areas other than the "new discharge area." Akin further argues that the signed version of the easement drafted by her counsel does comply with the settlement agreement, and she is therefore entitled to a $20,000 payment from AWD.

II. Standard of Review

Settlement agreements are analyzed as contracts, and the existence of a binding settlement is a question of fact. *Muther v. Broad Cove Shore Ass'n*, 2009 ME 37, ¶ 6, 968 A.2d 539. Courts have recognized a distinction between a preliminary "agreement to agree" and a binding settlement agreement. *Id.; Ault v. Pakulski*, 520 A.2d 703, 705 (Me. 1987). In order to be binding, a settlement agreement requires the mutual intent of the parties to

be bound by terms sufficiently definite to enforce. *Muther*, 2009 ME 37, ¶ 6, 968 A.2d 539. When litigants dispute whether an enforceable settlement was reached outside the presence of the court, findings of fact regarding the terms of the agreement and the parties' intent may be required. *See Marie v. Renner*, 2008 ME 73, ¶ 10, 946 A.2d 418.

III. Discussion

The Court finds the parties merely entered into an "agreement to agree" when they agreed to draft and sign an easement authorizing the discharge of water in the "new discharge area." Based on the parties' differing interpretations of this critical term, the Court could only order specific performance of the settlement agreement "by supplying, on its own, critical contractual terms as to which the parties never had a meeting of the minds," *Ault*, 520 A.2d at 705, and the settlement agreement as written is therefore unenforceable. The agreement provides only a vague description of the location of the easement, leaving this material term to be more fully determined at a later date. Clearly, during the process of attempting to come to agreement on this material term, the negotiation broke down, necessitating the filing of the motions now before the Court.

Specifically, throughout the negotiations following the mediation, it became apparent that the parties do not share the same understanding of the term "new discharge area." Even if the parties agreed to be bound by the terms of the settlement, including that water would only be discharged into the "new discharge area" under the easement, the parties have reached an impasse regarding the intended location of the "new discharge area" and have not provided the Court with objective means by which to determine the meaning of this term. The term "new discharge area" and the map attached to the settlement agreement are simply too indefinite to create an enforceable agreement.

AWD's understanding of the agreement is that Akin must "execute a drainage easement that grants the Water District the right to continue its bleeding operations

indefinitely, the same way it always has." (Def.'s Reply to Pl.'s Opp'n 5.) It argues the phrase "new discharge area," is a misnomer, as "the 'new discharge area' is the location where any remaining drinking water dissipated onto Akin's property consistently for years,"[1] and that the easement granted by Akin was intended to track an easement held by the Maine Department of Transportation ("MDOT") on Akin's property. (*See id.* at 3-4.) AWD further contends:

> Akin claims that the MDOT drainage outlet easement includes locations other than at or around the "new discharge area." ... However, the only support Akin offers for that claim is her own haphazard effort to identify the location of the drainage outlet easements by "hold[ing] up" two pieces of paper—one an aerial photograph, the other a CADD print out of dramatically different scales—"to see where ... [the] discharge outlets line up on Plaintiff's Property." Akin's haphazard attempt to identify MDOT drainage easements on her property is inaccurate and does not identify any MDOT drainage easement outside the "new discharge area."

(*Id.* at 4 n.1.)

While AWD's characterization of the problem is correct, this "haphazard" method for identifying the location of the "new discharge area" is the only evidence the Court has in support of a fact finding regarding the meaning of the phrase "new discharge area" in the settlement agreement. Nothing on the map attached to the settlement agreement provides information regarding scale or geographic orientation. The Court also has a copy of a map depicting the MDOT drainage easement, attached to Akin's motion as part of Exhibit J. This map shows the location of the drainage outlet at Sta. 20+708.6 Rt., which Akin contends is the location of the new drainage area. AWD has previously submitted to the Court the full text and map of the MDOT drainage easement, which includes two

---

[1] Although the Court finds the parties did not reach a mutual understanding as to the location of the new discharge area, it makes no sense that the use of the word "new" in the agreement was not intended to mean "new," but rather, as AWD would have the Court interpret it, "new" was actually intended to mean "same."

additional drainage outlets on Akin's property. (*See* Opp'n to Pl.'s App. for Prelim. Inj., Ex. C 11.) Those outlets are located at Sta. 20+665.6 Rt. and Sta. 20+734.0 Rt. (*Id.*) Comparing the aerial photograph with the MDOT maps, although it may be reasonably surmised that the maps depict the same general geographic location, the Court cannot make a finding with adequate precision regarding the location of the "new discharge area" and whether or not it encompasses more than one drainage outlet.

Given AWD's insistence that the easement agreed upon by the parties at mediation was intended to cover the full length of the MDOT easement, despite the complete absence of such language from the settlement agreement, the Court questions whether AWD understood the terms to which it was agreeing when it signed the settlement agreement. Moreover, Akin's current assertion that the MDOT easement is broader than she intended when she agreed to the "new discharge area" evidences the probability that the parties did not have a meeting of the minds regarding the location of the intended discharge area.

The Court agrees with Akin that the resolution of this dispute depends principally on whether or not the finalized easement comports with the terms of the settlement agreement.[2] The state of affairs prior to the date the parties reached their settlement, and the continued discussions following the signing of the settlement agreement, are irrelevant; rather, the language of the settlement agreement is what the parties have asked the Court to enforce. Based on the materials submitted to the Court, the Court cannot

---

[2] AWD has argued extensively that Akin's counsel agreed to AWD's version of the easement by email prior to altering the language to create the version that Akin ultimately signed. Akin countered in her motion and at the hearing that she should not be forced to sign an easement that does not comply with the parties' settlement agreement. Although Akin's counsel's apparent acquiescence to AWD's terms without Akin's consent was perhaps imprudent, the Court agrees with Akin on this issue. *See Ault*, 520 A.2d at 705 ("'[C]ontracts should be made by the parties, not by the courts....'") (quoting *Restatement (Second) of Contracts* § 33 comment b (1981)). Absent a finding that AWD's version of the easement complies with the settlement agreement, Akin should not be bound by its terms.

objectively make a determination as to which party's version of the easement (if either) aligns with the language of the settlement agreement, and the Court will not engage in any guesswork to do so.[3] Because the parties attach materially different meanings to the term "new discharge area," this term is not sufficiently definite to enforce, rendering the settlement agreement unenforceable.

III. Conclusion

For the foregoing reasons, Plaintiff Rachel B. Akin's motion to enforce the settlement agreement is DENIED. Defendant Auburn Water District's motion to enforce the mediation settlement agreement is also DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: 3/27/18

MaryGay Kennedy, Justice
Maine Superior Court

---

[3] The Court likewise will not endeavor to guess which version of the release should be enforced under the settlement agreement. The unenforceable easement provisions are not severable from the rest of the settlement agreement, and therefore, the release provision is likewise unenforceable.