1998 ME 17

## Howard J. LUDINGTON, III

### v.

## Stephen LaFRENIERE, et al.

### No. And–96–798.

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 10, 1997.

Decided Jan. 22, 1998.

---

Phillip E. Johnson, Johnson, Webbert & Laubenstein, Augusta, for plaintiff.

Sharon E. Nelson, Bangor, for Stephen LaFreniere.

Charles W. Cox, Jude and Cox, Newport, for Craig Dostie.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

CLIFFORD, Justice.

[¶ 1] Stephen M. LaFreniere and Craig Dostie appeal from a judgment entered following a non-jury trial in the Superior Court (Androscoggin County, *Perkins, J.*) finding them jointly and severally liable to specifically perform their contract with plaintiff Howard J. Ludington, III. On appeal, they contend that the Superior Court erred by: (1) finding Dostie personally liable on the contract, (2) ordering specific performance when an adequate remedy existed at law, (3) improperly awarding interest at the contractual rate of 12% per annum rather than at the statutory rate, and (4) not recognizing the plaintiff's failure to mitigate his damages. Finding no merit in appellants' contentions, we affirm the judgment.

[¶ 2] Several years prior to the transaction that is the subject of this litigation, LaFreniere sold the same real estate in Passadumkeag to Ludington. Ludington brought an action against LaFreniere alleging a fraudulent

sale. A judgment was entered in favor of Ludington and against LaFreniere for $200,-000, based on LaFreniere's failure to disclose that endangered species habitat, flood plain problems, and title defects made the property undevelopable. LaFreniere later proposed that he re-purchase the property from Ludington for $50,000, with the idea of developing it and using the proceeds to satisfy the judgment.[1] A contract to that effect was signed by Ludington as the seller, but was not signed by LaFreniere. Ostensibly because LaFreniere did not want to complicate matters with his pending divorce or attract the attention of the Department of Environmental Protection, Dostie, who is LaFreniere's cousin, signed the contract as the buyer to make it appear that LaFreniere was not involved in the transaction.

[¶ 3] Dostie signed the contract on December 4, 1992.[2] In 1994, after several mutually acceptable postponements of a closing date, LaFreniere announced that he was not going to complete the transaction contemplated by the contract. Ludington sued both Dostie and LaFreniere for specific performance and the actions were consolidated. After a non-jury trial the court found that Dostie and LaFreniere were jointly and severally liable on the contract, and ordered specific performance. The court also awarded Ludington interest on the $50,000 contract amount, at the rate set out in the contract, twelve percent per annum, from April 1, 1993 until all amounts are paid in full. This appeal followed.

## I.

[¶ 4] Dostie argues that he signed the contract as the agent of LaFreniere and,

accordingly, should not be bound personally.[3] The court concluded that both defendants were liable, finding that:

> Dostie signed both individually and as an agent for ... LaFreniere. Dostie intended to and did personally bind himself to the Agreement; Dostie intended to and did bind Lafreniere [sic] to the Agreement. Lafreniere has admitted that he is bound by the Agreement and that he and Dostie have a separate agreement between them providing that Lafreniere will indemnify Dostie with respect to his financial obligations under the Agreement.

[¶ 5] The intent of the parties in entering a contract is a question of fact. *See Seashore Performing Arts Center, Inc. v. Town of Old Orchard Beach,* 676 A.2d 482, 484 (Me.1996). We review the Superior Court's finding that Dostie was liable for clear error, *Harmon v. Emerson,* 425 A.2d 978, 982 (Me.1981). Although Dostie argues that he signed the contract only in his capacity as an agent and that he is not personally liable as a signatory on the contract, at one point in his testimony he stated that he intended to be personally bound.[4] Moreover, Ludington's former attorney testified that he understood that LaFreniere and Dostie would both be responsible for the obligations in the contract. LaFreniere also testified that he had agreed to reimburse Dostie if Dostie should have to perform the contract obligations or satisfy a judgment for the purchase price. Dostie signed the contract in his own name. His testimony that he intended to be bound and LaFreniere's

---

1. The judgment from the prior litigation has apparently now been satisfied.

2. The December 4, 1992 contract provided for conveyance of the property to the buyer in exchange for $50,000 plus interest at 12% per annum beginning to accrue on April 1, 1993 until the date of closing. The contract set the closing date at October 23, 1993, but allowed postponement by mutual agreement.

3. Because of the trial court's factually supported finding that Dostie intended to be personally bound, we need not address Dostie's contention that he is not liable because he was merely the agent for an undisclosed principal. *See* Restate-

ment, Second, Agency § 320 (1958) ("Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract."); *but see Nobleboro v. Clark,* 68 Me. 87, 93 (1878) (unequivocally requiring that when an agent purports to act for his principal and not for himself in the execution of a deed or contract, such an intention of the parties must appear within the four corners of the deed ... "and no evidence *aliunde,* except evidence of the authority of the agent or attorney, can be received to show such intent").

4. Dostie later testified that he did not intend to be personally bound on the contract.

agreement to indemnify him support the court's conclusion that the parties intended the contract to bind Dostie as well as LaFreniere.

## II.

[¶ 6] LaFreniere and Dostie contend that the court improperly granted specific performance to Ludington as the seller of the real estate. The contract provided that upon breach of the Buyer, the "Seller may, at his election, pursue any other remedies available to him, including an action for specific performance of this agreement." The Superior Court found that Ludington was entitled to specific performance by the express terms of the contract, and because the improbability of re-selling the property to anyone other than Dostie and LaFreniere made money damages an inadequate remedy. It also concluded that specific performance would "place Ludington and LaFreniere in the positions they were in before Lafreniere ever sold this defective property to Ludington in 1988."

[¶ 7] Specific performance is a substitute for the legal remedy of compensation whenever, in the discretion of the court, "the legal remedy is inadequate or impracticable." *McIntyre v. Plummer*, 375 A.2d 1083, 1084 (Me.1977); *see also Brown & Sons v. Boston & Maine R.R. Co.*, 106 Me. 248, 255, 76 A. 692 (Me.1909) (grant of specific performance "is uniformly deemed a matter of sound judicial discretion"). In appropriate circumstances, sellers may be entitled to specific

performance. *See Progressive Iron Works Realty Corp. v. Eastern Milling Co.*, 155 Me. 16, 21, 150 A.2d 760 (1959) (upholding decree of specific performance for seller where buyer was without right to rescind an escrow agreement for purchase of real property).

[¶ 8] The Superior Court heard evidence that the property would be very difficult to sell, and that LaFreniere, as someone experienced in land development, was better suited than Ludington to develop the land. The court's finding that Ludington lacked an adequate remedy at law was supported in the record, and the court acted within its discretion in ordering specific performance of the contract.

## III.

[¶ 9] LaFreniere and Dostie also contend that the contract provision requiring the buyer to pay interest at 12% until the closing[5] means that once the contract was breached, the statutory rate pursuant to 14 M.R.S.A. § 1602 should then apply. The court did not err by disregarding section 1602. That section provides a statutory rate of prejudgment interest for "all civil actions, except those actions *involving a contract* or note *which contains a provision relating to interest*...." 14 M.R.S.A. § 1602(1)(A) (1996 Supp.) (emphasis added). By its plain terms section 1602(1)(A) does not apply here because the contract provided for the calculation of interest.[6] The court correctly ordered repayment of interest at the contract rate.[7]

---

5. Paragraph 8 of the contract states:
   *Interest.* Buyer shall pay to Seller interest on the $50,000 purchase price, at the rate of 12 percent per annum. Said Interest shall begin to accrue on April 1, 1993, with payments being made on the first of each successive month until the closing on the sale.

6. *See also* 5 *Corbin on Contracts* § 1045 (1964). ("The contract may also provide, either expressly or by *reasonable implication*, for the payment of interest at a specified rate after the maturity of an obligation, and, therefore, after a breach by non-performance of the contract. In such a case, even though there has been a breach of contract, *the interest agreed upon may still be regarded as compensation for the use of money or for the credit extended*.") (emphasis added); 71 *Am.Jur.*2d § 217, Specific Performance (1973) ("The true rationale of decision in respect of

compensation for delay is that the contract is being enforced retrospectively and the equities adjusted accordingly.").

7. Appellants also argue that Ludington's motion for a continuance resulted in a five-month delay of the trial, and that pursuant to 14 M.R.S.A. § 1602(1) interest should have been suspended during the time delayed by the motion. 14 M.R.S.A. § 1602(1) states:

   If the prevailing party at any time requests and obtains a continuance for a period in excess of 30 days, interest shall be suspended for the duration of the continuance.

   Because the interest rate is governed by the contract, 14 M.R.S.A. § 1602(1) is inapplicable.

   LaFreniere and Dostie also argue that the statutory rate, and not the contract rate as ordered

## IV.

[¶ 10] Finally, LaFreniere and Dostie cite as error the fact that the court made *no reduction in Ludington's damages* even though he did not list the property with a real estate agent after the breach. It is true that a "plaintiff has a duty to use reasonable efforts to mitigate his or her damages." *Doughty v. Sullivan*, 661 A.2d 1112, 1122 (Me.1995) (emphasis added) (internal punctuation removed). In deciding upon specific performance, the court specifically found it unlikely that Ludington would ever sell to anyone other than LaFreniere and Dostie, a finding amply supported in the record, and that Ludington was entitled to specifically enforce the contract. In the absence of any showing that Ludington rejected reasonable offers made, or that he rebuffed actual inquiries, the court did not err in not concluding that Ludington failed to mitigate his damages.[8]

The entry is:

Judgment affirmed.

---

by the court, should apply for *post-judgment* interest. Because the statutory rate since the judgment has been higher than 12%, however, LaFreniere and Dostie have not been harmed by the use of the contract rate.

8. Ludington argues that the appeal is "fruitless and meritless" and that therefore he should be awarded treble costs and attorneys fees pursuant to M.R. Civ. P. 76(f). We will impose sanctions "only in egregious circumstances." *Biette v.* *Scott Dugas Trucking & Excavating*, 676 A.2d 490, 498 (Me.1996) (justifying sanctions for "unsubstantiated fraud allegations, unpreserved arguments, meritless contentions, and bad faith litigation") (internal punctuation removed). Although ultimately unpersuasive, appellants have provided adequate legal argument to make a credible appeal, and have raised issues that have required serious discussion to resolve. We cannot say that such an appeal is frivolous.