2009 ME 115

**Timothy P. FITZGERALD**

v.

**Christopher HUTCHINS.**

Supreme Judicial Court of Maine.

Submitted On Briefs: Sept. 30, 2009.

Decided: Dec. 3, 2009.

Edward W. Gould, Esq., Gross, Minsky, & Mogul, P.A., Bangor, ME, for Timothy Fitzgerald.

Jeffrey Bennett, Esq., The Bennett Law Firm, P.A., Portland, ME, for Christopher Hutchins.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, GORMAN, and JABAR, JJ.

JABAR, J.

[¶ 1] Timothy P. Fitzgerald appeals from a summary judgment entered by the Superior Court (Penobscot County, *Anderson, J.*) in favor of Christopher Hutchins on Fitzgerald's complaint for breach of contract, quantum meruit, and unjust enrichment in connection with the sale of a power plant. Fitzgerald argues that the court erred in concluding that Hutchins's agency status was dispositive in this case. Fitzgerald also contends that: (1) even if Hutchins was acting as an agent, Hutchins himself is also liable on

the contract; and (2) the court erred in failing to consider the applicability of an exception to the statute of frauds. Because we conclude that the Superior Court erred in granting summary judgment based upon agency principles, and because we find no alternative basis for the judgment, we vacate the summary judgment.

## I. BACKGROUND

[¶ 2] From 1997 until July of 2005, Fitzgerald worked for Alternative Energy, Inc. (AEI), a company of which Hutchins owns seventy-five percent. Fitzgerald's responsibilities at AEI included selling power plants, and in 2004 Fitzgerald unsuccessfully attempted to sell a power plant located in Chester. Until the sale at issue, Beaver Wood Joint Venture owned the Chester power plant.[1]

[¶ 3] In September of 2005, after Fitzgerald's employment with AEI ended, Hutchins telephoned Fitzgerald to ask for his help in selling the Chester power plant. Fitzgerald recalls that Hutchins stated the following to him:

> [H]i, [Fitzgerald]. I have somebody that called here in the office and wants to look at Chester. And I was wondering if you would do me a favor and do this for me and show them the Chester plant, and if the sale goes through, I'll give you a commission.

[¶ 4] Fitzgerald agreed to help Hutchins sell the power plant equipment, but not the real estate.[2] The exact amount of the commission was not discussed, and the agreement was not reduced to writing.

[¶ 5] Fitzgerald knew that Beaver Wood Joint Venture owned the Chester power plant and had previously observed the company conduct business through Hutchins. Fitzgerald also previously witnessed Hutchins act as a "spokesperson and/or deciding person" for Beaver Wood Joint Venture with the understanding that Hutchins was acting in his capacity as a representative of Beaver Wood Joint Venture. Nevertheless, in this instance, Fitzgerald believed and assumed he was working for Hutchins personally because Hutchins asked him for a favor and because "that's what [Fitzgerald's] process was." Hutchins presented no countervailing affidavits or supported statements of material fact regarding his version of the conversation between the parties.

[¶ 6] Fitzgerald showed the Chester power plant to potential buyers, and one of these buyers purchased the property. Although Fitzgerald offered only the power plant equipment for sale, the buyer purchased both the equipment and the real estate. After the sale of the power plant, Hutchins refused to pay Fitzgerald a commission on the sale of the equipment.

[¶ 7] In February of 2007, Fitzgerald filed suit in the Superior Court against Hutchins personally, alleging breach of contract, quantum meruit, and unjust enrichment. Hutchins moved for a summary judgment in May of 2008, asserting: (1) an affirmative statute of frauds defense to the breach of contract claim because Fitzgerald sought to hold Hutchins liable for the debt of Beaver Wood Joint Venture on a bare oral promise; and (2) that illegality barred all of Fitzgerald's claims because

1. AEI is the ninety-nine percent limited partner of Beaver Investors Limited Partnership. Beaver Investors Limited Partnership is the ninety-nine percent limited partner of Beaver Wood Joint Venture. The remaining one percent interest in Beaver Wood Joint Venture is owned by Beaver Chester G.P., Inc., an entity owned 100% by Hutchins.

2. The power plant equipment could be sold separately from the real estate, and removed from the land.

Fitzgerald engaged in "real estate brokerage services" without a real estate license in violation of 32 M.R.S. §§ 13003, 13004 (2008).[3]

[¶ 8] After its first review of the documents filed in support of and in opposition to the motion, the Superior Court issued an order noting that the filings were "silent" on whether Beaver Wood Joint Venture was a limited liability entity, and also "silent" on Hutchins's relationship with Beaver Wood Joint Venture. The court gave each side an opportunity to address those issues through supplemental filings. Hutchins filed a short reply with an attached affidavit. Fitzgerald did not file a response. Thereafter, the court entered a summary judgment in favor of Hutchins on agency principles. The court concluded that there was no genuine issue of material fact as to Hutchins's liability because Fitzgerald knew Beaver Wood Joint Venture owned the Chester power plant, and because Fitzgerald was expecting a commission from the sale of property owned by Beaver Wood Joint Venture. The court reasoned that the only evidence offered by Fitzgerald that Hutchins was acting in an individual capacity was Fitzgerald's own subjective belief, which was insufficient to raise a genuine issue of material fact. Fitzgerald timely appealed.

## II. DISCUSSION

■■■■ [¶ 9] We review a grant of a summary judgment de novo, considering "the evidence in the light most favorable to the party against whom judgment has been granted to decide whether the parties' statements of material facts and the referenced record material reveal a genuine issue of material fact." *Brawn v. Oral Surgery Assocs.*, 2003 ME 11, ¶ 15, 819 A.2d 1014, 1022 (quotation marks omitted). Summary judgment is appropriate when there is no genuine issue of material fact that is in dispute and, at trial, the parties would be entitled to judgment as a matter of law. *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821, 825; *Botka v. S.C. Noyes & Co.*, 2003 ME 128, ¶ 18, 834 A.2d 947, 952–53. A factual issue is genuine when there is sufficient supporting evidence for the claimed fact that would "require a fact-finder to choose between competing versions of the truth at trial." *Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747 (quotation marks omitted).

### A. Agency

■■■ [¶ 10] Hutchins asserts that, as a matter of law, he cannot be found personally liable to Fitzgerald because he was acting as an agent for Beaver Wood Joint Venture, a disclosed principal, and the Superior Court therefore properly granted summary judgment.

■■■ [¶ 11] For contracts made between third parties and agents for disclosed principals, the Restatement (Third) of Agency provides:

> When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal,
>
> (1) the principal and the third party are parties to the contract; and

3. Title 32 M.R.S. § 13003 (2008) provides: "It is unlawful for any person or entity to engage in real estate brokerage without a current real estate brokerage agency license issued under this chapter or a license authorizing the person to engage in brokerage activity on behalf of a brokerage agency."
Title 32 M.R.S. § 13004 (2008) provides:

> No person or entity may bring or maintain any action in the courts of this State for the collection of compensation for real estate brokerage services, without first proving that the person or entity was properly licensed by the Real Estate Commission at the time the cause of action arose.

(2) the agent is not a party to the contract unless the agent and third party agree otherwise.

Restatement (Third) of Agency § 6.01 (2006); *see also Ludington v. LaFreniere,* 1998 ME 17, ¶ 4 n. 3, 704 A.2d 875, 877 (quoting Restatement (Second) of Agency § 320 (1958), which provides: "Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract.").[4]

■■ [¶ 12]  We discern no genuine issue of material fact that Hutchins had authority[5] to act as an agent on behalf of Beaver Wood Joint Venture. "Whether an agency relationship exists is generally a question of fact...." *Steelstone Indus., Inc. v. N. Ridge Ltd. P'ship,* 1999 ME 132, ¶ 12, 735 A.2d 980, 983. Fitzgerald admitted that he: (1) knew Beaver Wood Joint Venture had conducted business through Hutchins; and (2) understood that Hutchins acted as a spokesperson and decision-maker for Beaver Wood Joint Venture. Based upon these admissions, no factual dispute exists that Hutchins had authority to act as an agent for Beaver Wood Joint Venture.

■ [¶ 13]  Nevertheless, Fitzgerald contends that, notwithstanding Hutchins's general authority to act as an agent for Beaver Wood Joint Venture, Hutchins was acting in his individual capacity when he asked Fitzgerald to help sell the Chester power plant. Fitzgerald relies upon the alleged oral contract, which he contends creates a genuine issue of material fact that Hutchins was acting in an individual capacity, rather than as a representative of Beaver Wood Joint Venture. Moreover, we note that even if Hutchins was contracting as an agent on behalf of Beaver Wood Joint Venture, Hutchins could have agreed to bind himself as a party to the oral contract. *See* Restatement (Third) of Agency § 6.01(2). Indeed, regardless of whether agency principles apply, resolution of this issue requires us to interpret the alleged oral agreement between the parties. *See* Restatement (Third) of Agency § 6.01 cmt. d(2) ("The nature of the parties' contract may ... establish whether an organizational executive agreed to be individually liable."). Accordingly, we review the summary judgment record concerning the alleged oral contract to ascertain if there is a genuine issue of material fact as to whether Hutchins agreed to bind himself individually.

[¶ 14]  Fitzgerald alleges an oral contract with Hutchins based on the following conversation:

> [H]i, [Fitzgerald].  I have somebody that called here in the office and wants to look at Chester.  And I was wondering if you would do me a favor and do this for me and show them the Chester plant, and if the sale goes through, I'll give you a commission.

We cannot conclude that this language conclusively demonstrates that Hutchins intended to contract with Fitzgerald only in a representative capacity.  By using the language "if you would do *me* a favor and do this for *me* " and "*I'll* give you a commission," one could reasonably interpret, as Fitzgerald argues, that Hutchins in-

4. Conversely, an agent entering into a contract for an undisclosed or unidentified principal will be liable as a party to the contract. Estate of *Saliba v. Dunning,* 682 A.2d 224, 226 (Me.1996); *see also* Restatement (Third) of Agency §§ 6.02–6.03 (2006).

5. An agent's authority may be either actual or apparent. *See QAD Investors, Inc. v. Kelly,* 2001 ME 116, ¶ 19, 776 A.2d 1244, 1250 (explaining apparent authority); *Libby v. Concord Gen. Mut. Ins. Co.,* 452 A.2d 979, 981–82 (Me.1982) (explaining actual, or express, authority).

tended to act in his individual capacity or as an agent agreeing to become a party to the contract. The only direct evidence in the summary judgment record of the conversation between Fitzgerald and Hutchins is the deposition testimony of Fitzgerald. Hutchins did not controvert Fitzgerald's account of the conversation, and Hutchins's personal part ownership of Beaver Wood Joint Venture is evidence that he stood to gain personally from the sale. Although there is circumstantial evidence that Hutchins was intending to commit only Beaver Wood Joint Venture to the alleged oral contract, adopting this evidence would require us to make favorable inferences in favor of Hutchins. This runs counter to the rules of summary judgment practice, which entitle the non-moving party to the "full benefit of all favorable inferences." *Curtis v. Porter*, 2001 ME 158, ¶ 9, 784 A.2d 18, 22 (quotation marks omitted).

[¶ 15] A review of the somewhat complicated connection between Hutchins, AEI, and Beaver Wood Joint Venture underscores our conclusion. Before the alleged agreement, Fitzgerald, as an employee of AEI, attempted to sell the Chester power plant. AEI owns ninety-nine percent of Beaver Investors Limited Partnership, which in turn owns ninety-nine percent of Beaver Wood Joint Venture, the owner of the Chester power plant. There could be any number of reasons why Hutchins, effectively the controlling owner of the entities involved, would personally agree to pay Fitzgerald a commission. Because the intent of the parties in entering a contract is generally a question of fact, *Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 9, 760 A.2d 1041, 1044, and because there is a factual basis for a fact-finder to conclude that, in this instance, Hutchins intended to commit himself to pay Fitzgerald a commission, summary judgment is inap-

propriate. *See Tondreau v. Sherwin–Williams Co.*, 638 A.2d 728, 730 (Me.1994) (explaining that if the record "does not completely eliminate the possibility of an issue of material fact concerning the intent of the parties, summary judgment is inappropriate"); *see also Moulton Cavity & Mold, Inc. v. Lyn–Flex Indus., Inc.*, 396 A.2d 1024, 1029 (Me.1979) ("While the interpretation of unambiguous language in a written contract falls within the province of the court, questions of fact concerning the terms of an oral agreement are left to the trier of fact." (citations omitted)).

[¶ 16] Although we conclude that Hutchins is not entitled to a summary judgment based upon agency principles, we could affirm a summary judgment for reasons different from those upon which the Superior Court relied. *See Houde v. Millett*, 2001 ME 183, ¶ 9, 787 A.2d 757, 759. We proceed, therefore, to address alternative arguments advanced by Hutchins in support of his motion for summary judgment.

B. Sufficiently Definite

[¶ 17] We have long stated that an agreement, in order to be binding, "must be sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liabilities of the parties." *Searles v. Trs. of St. Joseph's Coll.*, 1997 ME 128, ¶ 13, 695 A.2d 1206, 1211 (quotation marks omitted); *Corthell v. Summit Thread Co.*, 132 Me. 94, 99, 167 A. 79, 81 (1933); *see also* Restatement (Second) of Contracts § 33 (1981). Relying upon this principle, Hutchins argues that, because there is no evidence regarding the amount of a "commission" to be paid, the oral contract Fitzgerald alleges is so indefinite that the rights of the parties cannot be ascertained. We disagree.

[¶ 18] To be sure, "[i]ndefiniteness may relate to the time of performance, the price to be paid, work to be done, property to be transferred or other miscellaneous stipulations of the agreement." *Corthell*, 132 Me. at 99, 167 A. at 81. However, "[i]f a contract leaves open a key term, the law invokes the standard of reasonableness, and courts will supply the needed term." *Ault v. Pakulski*, 520 A.2d 703, 706 (Me.1987) (Glassman, J., dissenting) (citing *Corthell*, 132 Me. at 99, 167 A. at 81); *see also Brooking v. Me. Employment Sec. Comm'n*, 449 A.2d 1116, 1118 n. 3 (Me.1982) ("If compensation for services is not stated, a reasonable value will be inferred."). Although missing or indefinite essential terms may, in certain cases, preclude a reasonably calculable remedy or indicate a lack of contractual intent so as to render an agreement unenforceable, *see, e.g., Ault*, 520 A.2d 703, this is not such a case. Particularly in light of the fact that Fitzgerald had previously sold power plants for AEI, Hutchins's company, the lack of a stated percentage for commission does not render the contract Fitzgerald alleges unenforceable. *See* Restatement (Second) of Contracts § 33 cmt. a ("An offer which appears to be indefinite may be given precision by usage of trade or course of dealing between the parties."); *see also Towne v. Larson*, 142 Me. 301, 305, 51 A.2d 51, 53 (1947) (observing that courts should be "reluctant to construe a contract so as to render it unenforceable if that result can be avoided"). This being so, summary judgment on this basis is unwarranted.

## C. Statute of Frauds

[¶ 19] Hutchins contends that the statute of frauds bars enforcement of the oral contract that Fitzgerald alleges exists. Specifically, Hutchins argues that Fitzgerald seeks to hold Hutchins personally liable for an alleged debt of Beaver Wood Joint Venture, the owner of the Chester power plant. This argument is without merit.

[¶ 20] Pursuant to 33 M.R.S. § 51(2) (2008), no action shall be maintained "[t]o charge any person upon any special promise to answer for the debt, default or misdoings of another" unless the promise, contract, or agreement is in writing and signed by the party to be charged. Even assuming that the contract alleged falls within this provision of the statute of frauds,[6] we have recognized "an exception in a case where the promisor's main purpose in making his promise is to secure some benefit for himself." *Graybar Elec. Co. v. Sawyer*, 485 A.2d 1384, 1389 (Me. 1985).

[¶ 21] The focus of the "main purpose" exception is whether the promisor's main objective was to advance the promisor's own interests. *Id.* A slight or indirect possible benefit to the promisor is insufficient. *See* Restatement (Second) of Contracts § 116 cmt. b (1981). Rather, as we explained in *Graybar*:

> The benefit that a promisor must expect to receive under the main purpose rule in order to be held to his promise must be substantial, immediate, and pecuniary, though it may flow to the promisor through benefit to the principal obligor. That is, although the promisor need not receive cash in hand from the promisee, the path of benefits flowing to the promisor must not be so circuitous or uncertain that obtaining those benefits cannot be said to have been his main purpose in

---

6. We note that Hutchins, having raised the statute of frauds as an affirmative defense, *see* M.R. Civ. P. 8(c), bears the burden of proving this defense. *See King v. Town of Monmouth*, 1997 ME 151, ¶ 7, 697 A.2d 837, 840.

making the promise. As a matter of practicality, the promisor's advantage must be served in a straightforward way in order for the main purpose rule to apply.

485 A.2d at 1390 (citing Restatement (Second) of Contracts § 116).

[¶ 22] Guided by the above-stated standard, we find it evident that a genuine issue of material fact exists as to whether the "main purpose" exception applies to take Hutchins's alleged oral promise out of the statute of frauds. Though Beaver Wood Joint Venture directly benefits from the sale of the Chester power plant, Hutchins, as a significant stakeholder in the business, stands to earn a substantial and immediate pecuniary gain from the sale. *See Wolff Ardis, P.C. v. Kimball Prods., Inc.,* 289 F.Supp.2d 937, 942 (W.D.Tenn.2003) (finding the "main purpose" exception particularly applicable in cases where promises to answer for the debt of a corporation were made by promisors who "owned stock in closely held corporations and controlled a significant amount, if not all, of the corporate stock"). Whether such a benefit was Hutchins's "main purpose" in contracting with Fitzgerald is an issue for the trier of fact. *See* 4 Caroline N. Brown, Corbin on Contracts § 16.1, at 319 (rev. ed.1997) (noting that because the "main purpose" rule involves "fine distinctions in degree of benefit and difficult questions as to purpose and motive," it is "often said that the issue is for the trier of fact").

### D. Real Estate Brokerage License Act

[¶ 23] The Real Estate Brokerage License Act, 32 M.R.S. §§ 13001–13283 (2008), was "enacted to ensure that all those who provide real estate brokerage services are properly licensed with the Real Estate Commission so that their actions may be monitored and regulated by the Commission for the public good." *Smith v. Cannell,* 1999 ME 19, ¶ 9, 723 A.2d 876, 879.

[¶ 24] Hutchins contends that section 13004 of the Act precludes Fitzgerald's breach of contract, quantum meruit, and unjust enrichment claims as a matter of law. Although Fitzgerald concedes that he was not licensed, Fitzgerald argues that the compensation he seeks is not for "real estate brokerage services." *See* 32 M.R.S. §§ 13001(2), 13004.

[¶ 25] Viewing the evidence in the light most favorable to Fitzgerald, as we must, *see Brawn,* 2003 ME 11, ¶ 15, 819 A.2d at 1022, the summary judgment record reveals that Fitzgerald agreed to help Hutchins sell the Chester power plant equipment, and offered only the power plant equipment for sale. Although the buyer eventually purchased both the equipment and the real estate, the power plant equipment could be sold separately from the real estate, and removed from the land. Fitzgerald has at least generated a genuine issue of material fact as to whether his actions were "calculated to result in the transfer of an interest in real estate," 32 M.R.S. § 13001(2), rendering summary judgment inappropriate.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with this opinion.