STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-12-444
JAW -Cum- 11/15/2013

TODD VAFIADES,
        Plaintiff

v.

MIKE'S APPLIANCE
REPAIR, INC.
        Defendant

STATE OF MAINE
Cumberland, ss, Clerk's Office

NOV 15 2013

RECEIVED

ORDER ON MOTION FOR
SUMMARY JUDGMENT

Defendant Mike's Appliance Repair, Inc. moves the Court for summary

judgment.

## Factual and Procedural Background

Plaintiff Todd Vafiades owns a vacation home in Oxford, Maine that he visits

approximately twice a month. (Def.'s S.M.F. ¶¶ 1, 5.) In September 2010, Mr. Vafiades

noticed that his refrigerator was not cooling properly, leaving the interior frozen at the

bottom and room temperature at the top. (Def.'s S.M.F. ¶ 5.) On September 28, 2010, Mr.

Vafiades called Defendant Mike's Appliance Repair ("MAR") to schedule a service visit

for the refrigerator. (Def.'s S.M.F. ¶ 6.) Michael Mann from MAR inspected the

refrigerator on October 4, 2010 and discovered a broken fan. (Def.'s S.M.F. ¶ 7.) Mr.

Mann notified Mr. Vafiades that he would need to order parts before making the repair.

(Def.'s S.M.F. ¶ 7.)

On November 1, 2010, Mr. Mann returned to Mr. Vafiades' home, repaired the

refrigerator, and returned it to its original position against the wall. (Def.'s S.M.F. ¶ 8.)

Between November 1 and November 9, 2010, no one visited Mr. Vafiades' home. (Def.'s

S.M.F. ¶ 9.) On November 9, Mr. Vafiades visited the home, but he did not notice any

problems with the refrigerator. (Def.'s S.M.F. ¶ 10.) No one visited the house between November 9 and November 29, 2010. (Def's S.M.F. ¶ 11.)

On November 29, 2010, Mr. Vafiades visited the house and discovered water all over the floor of the kitchen and throughout the house. (Def.'s S.M.F. ¶ 12.) Mr. Vafiades identified the source of the water as coming from behind the refrigerator. (Def.'s S.M.F. ¶ 13.) After pulling the refrigerator out from the wall, he found that the coupling fastening the plastic water pipe to the water supply line had released and that a small hose was expelling water. (Def.'s S.M.F. ¶ 14.) Plaintiff shut off the water supply and had the refrigerator repaired. (Def.'s S.M.F. ¶¶ 15-16.)

Mr. Vafiades filed his complaint on October 9, 2012, alleging that Mr. Mann of MAR negligently repaired his refrigerator.[1] Specifically, Mr. Vafiades alleges that the Mr. Mann improperly attached the water supply line and that he failed to inform Mr. Vafiades that plastic tubing was used to attach the refrigerator to its water source.

## Discussion

1. Standard of Review

"Summary judgment is appropriate when there is no genuine issue of material fact that is in dispute and, at trial, the parties would be entitled to judgment as a matter of law." *Fitzgerald v. Hutchins*, 2009 ME 115, ¶ 9, 983 A.2d 382. "An issue is genuine if there is sufficient evidence supporting the claimed factual dispute to require a choice between the differing versions; an issue is material if it could potentially affect the outcome of the matter." *Brown Dev. Corp. v. Hemond*, 2008 ME 146, ¶ 10, 956 A.2d 104. To survive a defendant's motion for summary judgment, "the plaintiff must establish

---

[1] Mr. Vafiades' complaint also included claims against the alleged manufacturer and installer, Chase Custom Homes and Finance, Inc. and L.P. Appliance Distributors, Inc. Those defendants have settled.

a prima facie case for each element of her cause of action." *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897.

2. Standard of Care

Mr. Vafiades alleges, and MAR does not dispute, that the standard of care for refrigerator repairs requires that when a repair person detaches a water supply line, he must correctly reattach it. For the purposes of this motion for summary judgment, MAR concedes that Mr. Mann detached the water supply line. Therefore, Mr. Vafiades has shown there was a duty with an articulable standard of care.

Mr. Vafiades also initially attempted to establish that the use of plastic piping, as opposed to copper piping, was a breach of the standard of care, but he concedes that he cannot establish that the use of copper piping is standard practice. (Pl.'s Opp. Memo, page 13; Def.'s S.M.F. ¶¶ 25-28.) He nevertheless asserts that he is not "abandoning his position." (Pl.'s Opp. Memo, page 13.) He argues that MAR owed a duty to notify Mr. Vafiades that he should install copper piping as recommended by the refrigerator's instruction manual. Mr. Vafiades' argument is not persuasive. If copper piping is not the standard of care, then there would have been no reason to notify Mr. Vafiades that he should have a copper line installed. Mr. Vafiades' claim is limited to whether Mr. Mann correctly reattached the water supply line.

3. Breach and Proximate Cause

Defendants challenge whether Mr. Vafiades has raised a genuine issue of material fact on whether MAR breached its duty to properly reattach the water supply line and whether that breach proximately caused the harm suffered in this case. (Pl.'s S.M.F. ¶ 1.) Mr. Vafiades points to Mr. Mann's failure to clamp the water line to the back of the

3

refrigerator and Mr. Mann's failure to fully tighten the coupling as breaches that proximately caused the water line to pop out of the coupling.

### a. *Failure to Clamp Water Line*

Mr. Vafiades claims that Mr. Mann breached a duty by failing to clamp the water line to the back of the refrigerator. The manual for Mr. Vafiades' refrigerator states that the water supply line should be clamped to the back of the refrigerator after it is connected to the coupling. (Pl.'s S.M.F. ¶ 4.) Mr. Mann admitted that if the refrigerator's manual stated that the water supply line should be secured to the back of the refrigerator, then he should have secured it in that manner. (Pl.'s S.M.F. ¶ 8.) Mr. Mann admits that he did not secure the water line to the back of the refrigerator. (Pl.' S.M.F. ¶ 7.)

There is a genuine issue of material fact as to whether this clamp serves any functional purpose. (Pl.'s S.M.F. ¶ 5; Def.'s Reply to Pl.'s S.M.F. ¶ 5.) Mr. Vafiades' position is that the failure to clamp the water line to the back of the refrigerator allows the line to become stressed when the refrigerator is moved and could cause the line to separate from the coupling. (Pl.'s S.M.F. ¶ 5.) MAR contends that no harmful consequences will result from a failure to secure the water line with a clamp. (Def.'s Reply to Pl.'s S.M.F. ¶ 5.) This is an issue for the jury. Whether Mr. Vafiades has raised an issue of fact on whether Mr. Mann's breach proximately caused the harm in this case is discussed below.

### b. *Failure to Fully Tighten the Coupling*

Mr. Vafiades alleges that Mr. Mann failed to fully tighten the coupling after performing his repair work on the refrigerator. He relies on the expert opinion of Stephen Pomerleau for support. Mr. Pomerleau is a service manager for Agren Appliance.

4

(Pomerleau Dep. 3:9.) Based on photographs of the refrigerator and the water line and other information told to him about the case, it is Mr. Pomerleau's opinion that the coupling was not sufficiently tightened, which caused the water line to slip apart. (Pomerleau Dep. 36:8-10.)

MAR claims that Mr. Pomerleau cannot establish that a failure to tighten caused the line to slip apart. According to MAR, since Pomerleau cannot rule out other theories of causation based on the photographs, his opinion is mere conjecture or speculation. More specifically, MAR argues that Pomerleau cannot rule out that the plastic pipe itself was dried and cracked or defective, that the coupling was defective, or that the ferrule[2] was improperly made. (Def.'s S.M.F. ¶¶ 19-21.)

These claimed deficiencies go to the weight and not the admissibility of the expert testimony. *See Kay v. Hanover Ins. Co.*, 677 A.2d 556, 559 (Me. 1996) (stating that an expert does not need to state an opinion with any specific degree of certainty). Under Rule 702 of the Maine Rules of Evidence, where specialized knowledge will assist a jury, "a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise." MAR does not attack Mr. Pomerleau's qualifications. Mr. Pomerleau's opinion is informed by his experience with refrigerator repairs and based on his knowledge of this case and the photographs provided to him. It is his expert opinion that the malfunction here was caused by a failure to tighten the water line.

---

[2] According to http://www.ehow.com/how_12157538_attach-nut-ferrule-water-line-refrigerator.html, "[a] ferrule and nut combine to ensure a refrigerator waterline does not leak under pressure. The ferrule resembles an elongated tapered washer that has an inner diameter that matches the outer wall diameter of the refrigerator waterline. When the nut compresses the ferrule, it seats in the matching taper of the refrigerator connection and seals the waterline connection. Installing both components in the correct way and in the correct order will ensure the connection remains sealed when the water is turned on." Read more: http://www.ehow.com/how_12157538_attach-nut-ferrule-water-line-refrigerator.html#ixzz2kkA1Op3f.

MAR urges the Court to disregard Mr. Pomerleau's testimony because there are no facts to support his opinion. "[A]n expert theory may not form the basis of a favorable verdict if there are no facts in evidence on which to apply the theory to the case at hand." *Green v. Cessna Aircraft Co.*, 673 A.2d 216, 218 (Me. 1996). The *Green* case involved a plane crash and whether it occurred as a result of pilot error or the failure of a clamp on the plane. *Id.* at 218. The Law Court affirmed summary judgment for the defendant because there was no evidence in the record to support plaintiff's expert's theory, but there was evidence to support defendant's theory "that the accident occurred as a result of pilot error." *Id.* at 219.

In this case there is sufficient evidence to support Mr. Pomerleau's theory. First, MAR concedes for the purposes of this motion that Mr. Mann detached the water line in this case, thus MAR was responsible for correctly reattaching the line. Second, the timing of the accident, less than one month after MAR's repair is consistent with Mr. Pomerleau's theory that Mr. Mann failed to tighten the coupling. Third, based on Mr. Pomerleau's experience with similar accidents, he testified, "that blowout, the way that separated would never have happened if [the coupling] were tightened properly." (Pomerleau Dep. 84:17-18.) Finally, Mr. Pomerleau testified that because the water line was not clamped to the back of the refrigerator, the fittings had a possibility of loosening further when the refrigerator was moved. (Pomerleau Dep. 43:21-25.)

On the other hand, there is no evidence at this point that any of the parts involved in this case were defective. Unlike in *Green*, where all of the facts undercut the expert's theory, the facts here do not clearly point to alternative theory of the case. That Mr.

6

Pomerleau cannot rule out all other possible causes of the accident in this case is not a bar to admitting his testimony.

### 4. The Parties' Subsequent Filings

After MAR filed its motion for summary judgment, Mr. Vafiades submitted an affidavit from Mr. Pomerleau based on newly discovered, higher-quality versions of photographs presented at his deposition. The parties dispute whether the Court could consider the affidavit in resolving this motion. Because the Court finds that Mr. Pomerleau's testimony from his deposition is sufficient to raise genuine issues of material fact on the elements of negligence, the parties' subsequent filings on the affidavit issue are moot.

Accordingly, the entry is:

Defendant's motion for summary judgment is DENIED.

Dated: November 15, 2013       _____
                              Joyce A. Wheeler
                              Justice, Superior Court

```
Plaintiff-David Dubord Esq/Daniel Eichorn Esq
Defendant-Wendell Large Esq/Carol Eisenberg Esq
```