STATE OF MAINE
WASHINGTON, SS.

SUPERIOR COURT
Docket No. CV-2014-0015

Priscilla G. Ashton           )
(formerly Bob Turton)         )
                  Plaintiff,  )
                              )
                              )
         v.                   )          Decision and Judgment
                              )
                              )
John Chambers and             )
Rhonda Chambers, et. als.,    )
                  Defendants. )


## Introduction

Priscilla G. Ashton brought this civil action, seeking damages arising out of the end of her residency at a facility owned by Defendants.[1] Trial was held on June 29, 2016, at which Plaintiff was represented by Attorney Mark C. Joyce and Defendant by Attorney Daniel L. Lacasse. The court heard testimony from Plaintiff, Defendant Rhonda Chambers, Erica Pike, Helen Zidowecki, Thomas Chambers, Cheryl Poole, Lee Seelye, and Diana Howell. The parties submitted written post-trial arguments.

The court thanks counsel for an efficient trial presentation and helpful written arguments. The case is now in order for decision.

## Witness Evaluations

The evidence presented conflicting accounts of critical events. The court found Plaintiff to be honest. The court found all other witnesses to be the same. The findings of fact in this decision therefore reflect the court's evaluation of the accuracy, completeness, and reliability of the various witnesses' memories rather than the witnesses' sincerity.

## Factual Findings

Plaintiff moved into Union Village House, a residential care facility licensed by the Maine Department of Health and Human Services, on January 29, 2014. The terms of

---

[1] The complaint identifies Plaintiff as "Bob Turton." During the pendency of the action, Plaintiff filed a motion, which the court granted, reflecting Plaintiff's legal change of name to "Priscilla G. Ashton." The name change reflected an underlying change in gender identity. During the events giving rise to the case, Plaintiff identified as a man but now identifies as a woman. In this decision, the court refers to Plaintiff as if she had been identified as a woman during the events in question as well as throughout the pendency of the case.

Plaintiff's tenancy were defined by the contract that was admitted as Plaintiff's Exh. 4. Thomas Chambers, the son of Defendants Chambers (and a former police officer), was the general manager of Union Village House at all times relevant to this action. Before the parties entered in the contract, Thomas Chambers met with Plaintiff.

The purpose for the meeting was to match Plaintiff's particular needs for supported living with the facility's capacity to provide for them. Mr. Chambers drove to Bangor for the meeting and spent two hours in conversation with Plaintiff. Because Plaintiff ambulates with a motorized device, Mr. Chambers knew Plaintiff would require a relatively large room, which was available at Union Village. Plaintiff did not state she would need a private room and the contract specified she would be provided a semi-private room. Pl. Exh. 4, Appendix A at ¶ V (E) (8).

The contract was signed on January 29, 2014. Plaintiff then moved into a private room with a private bathroom at Union Village House. On July 27, 2014, Plaintiff suffered flashbacks generated by her Post Traumatic Stress Disorder and was taken to the Calais Regional Hospital for a mental health evaluation. The evaluation showed she did not require inpatient hospitalization and she was cleared to return to Union Village House.

Plaintiff declined to return. She complained about the manner in which her medication had been administered to her and accused Mr. Chambers of having assaulted her. She would not meet with Mr. Chambers when he came to the hospital. Based on all the testimony presented, the court finds that Plaintiff's medication had been administered in accordance with applicable regulations and protocol and finds further that Mr. Chambers neither assaulted Plaintiff nor mistreated her in any way.

The parties scheduled a meeting for July 30 to discuss the possibility of Plaintiff returning to Union Village House. Despite Defendant's stated position that Plaintiff was free to return to the facility, and despite hospital staff's inability to find an alternative placement, Plaintiff refused to return pending the scheduled meeting. She also sent a friend to retrieve some of her belongings from Union Village House. The friend did not have the ability to retrieve Plaintiff's motorized conveyance and therefore left it. (Defendant stored the transportation device and other remaining property, and later charged Plaintiff fees for storage. The fees were never collected and, although Plaintiff continues to be aggrieved by the issue, the uncollected storage fees are not germane to the decision in this action.)

After Plaintiff stated unequivocally that she would not return to the facility, Defendant was presented with two inquiries by persons with immediate needs who desired to live at Union Village House. Mr. Chambers spoke with two registered nurses at the hospital. They reported Plaintiff's continued refusal to return to the facility. On the morning of the 30ᵗʰ, before the scheduled meeting, Defendant filled Plaintiff's former room with a hospice patient.

Mr. Chambers called off the meeting but within a short period of time offered Plaintiff another room. Although this room was smaller than the original room and was semi-private rather than private, it met regulatory standards for a person of Plaintiff's needs and was consistent with the terms of the contract the parties had signed in January.

2

Plaintiff declined to occupy this room. She later changed her mind and was able to return to her original room on August 26, 2014.

## Analysis

The contract provides specific circumstances under the terms of which Defendant could terminate Plaintiff's stay at the facility. Pl. Exh. 4 §§ 5.3, 5.4. According to § 5.3, "[e]ach resident has the right to continued residence whenever a valid contract for services is in force." The question presented by the factual record is whether, at the time Plaintiff's room was filled by another patient, the contract for services was still in force. The contract does not specify the statements or acts by which a resident abandons the contractual right to occupy the facility.

"[I]f a contract leaves open a key term, the law invokes the standard of reasonableness, and courts will supply the needed term." Fitzgerald v. Hutchins, 2009 ME 115, ¶ 19, 983 A.2d 382 (quoting Ault v. Pakulski, 520 A. 2d 703, 706, (Me. 1987) (Glassman, J., dissenting)). The standard of reasonableness compels this court to conclude that Plaintiff abandoned the contract when she repeatedly declined to return to Union Village House, after having been medically cleared to do so, and had some of her belongings removed from her room. Plaintiff might in theory have returned following her scheduled meeting with Mr. Chambers but she made no commitment to do so. Defendants had no reasonable expectation that Plaintiff would return and much reason to expect she would not.

## Judgment

Based on the foregoing, the court concludes that Plaintiff has not proved her claim for breach of contract. Her further claims based on theories of illegal eviction and unfair trade practices are dependent on the contract claim and therefore fail as well. JUDGMENT shall enter in favor of Defendants.

The clerk is directed to incorporate this order on the docket by reference.

Dated: August 23, 2016

Bruce C. Mallonee
Justice, Maine Superior Court

3