STATE OF MAINE                                    SUPERIOR COURT
AROOSTOOK, ss.                                    LOCATION: CARIBOU
                                                  DOCKET NO.: CARSC-CV-18-031


TULSA, INC.,                          )
                                      )
            Plaintiff,                )
                                      )
      v.                              )          **DECISION AND JUDGMENT**
                                      )
JT'S MARKET, INC. and                 )
JOHN L. THYNG                         )
                                      )
            Defendants.               )


      This matter is before the court on Defendant John L. Thyng's Motion for Summary

Judgment on Count II of Plaintiff's Complaint.

## BACKGROUND

      Buck's Market was a convenience store and gas station located in Presque Isle,

Maine. In late 2016, Defendant John Thyng ("Defendant" or "Thyng") engaged in

negotiations to purchase the assets of Buck's Market from its corporate owner, Buck's

Market, Inc. (Defendant's Statement of Material Facts ("DSMF") ¶ 2.) Thyng had planned

to assume the name "Buck's Market Inc.," but that was not possible, so Thyng created a

new corporation, JT's Market, Inc., which purchased the assets and operation of Buck's

Market. (DSMF ¶ 3.)[1] In late September 2016, Steven Perrault and Keith Perrault, both

members of Tulsa, Inc., met with Thyng at his request to discuss buying gas from Tulsa

for resale.[2] (Plaintiff's Additional SMF "PASMF" ¶ 1.) There is a dispute about whether

_____

[1] Although Plaintiff denies this fact it is not material.

[2] Thyng generally objects to nearly all of Plaintiff's additional facts by stating that he never
represented to Tulsa that he was acting in his personal or individual capacity, and did not act in

1

Thyng told Steven and Keith that he would be operating the business under the corporate name of JT's Market. (DSMF ¶ 6, PASMF ¶ 4.) At this meeting they discussed delivery and payment terms for gas. (DSMF ¶ 6.) Tulsa alleges that Thyng said he was buying Buck's Market and told Steven and Keith that "[y]ou won't have to worry about getting paid. I'll be able to rotate deliveries. I'll be paid and you'll get paid." (PASMF ¶ 4.) Thyng denies making this statement. An agreement was struck, apparently, as Tulsa continued to deliver fuel to Buck's Market. So far as the court can tell, there was never any contract or agreement reduced to writing. JT's Market, Inc. operated Buck's Market under its corporate name from February 2017 forward but Tulsa denies knowing that JT's Market was operating Buck's, as opposed to Thyng personally operating it. (DSMF ¶ 7, Plaintiff's Reply SMF ("PRSMF") ¶ 7.)

In February 2017, Kim Lajoie, another member of Tulsa, noticed that Buck's Market's gas account was being paid by a check from JT's Market. (PASMF ¶ 5). When she asked Thyng if he wanted the bills to go to JT's Market, Inc. instead, he told her to continue as they were doing. (PASMF ¶ 5). Thyng denies this is a personal guaranty. Tulsa continued to deliver fuel to Buck's Market after the initial meeting with Tulsa and Thyng, but JT's Market fell behind in payments in July 2017. (DSMF ¶ 8.) After the delinquency, Tulsa alleges that Steven Perrault met with Thyng, who made an oral

_____

such a way. Additionally, Thyng objects to many of the Plaintiff's facts and argues that the court should not consider its "self-serving and bald statements" because they are not credible as they are contradicted within the Plaintiff's own exhibits, and therefore should not be considered on summary judgment. It is not the role of the court, however, to determine credibility on this summary judgment motion. *See Arrow Fastener Co. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 16, 917 A.2d 123 (explaining that on a motion for summary judgment evidentiary inferences based on credibility are impermissible and that it is the factfinder, not the summary judgment court, that must weigh the evidence to determine the truth.) Lastly, Thyng objects to Plaintiff's facts regarding statements to Keith and Kim as going beyond the scope of the allegations in the Complaint, as it primarily relied on Thyng's alleged statement to Steven, who died shortly after the Complaint was filed. This issue is discussed later in this Decision.

personal guaranty[3] to Steven that he would pay out of his personal account anything that JT's Market did not pay. (DSMF ¶ 9.) Thyng denies this statement.

In October 2017, Kim spoke with Thyng, who said that he was trying to get a loan to pay the account with Tulsa up to date. (PASMF ¶ 8.) Thyng admits the statement, but denies it meant he would get a loan in his personal capacity. JT's Market remained in default with Tulsa and the business closed in March 2018, owing Tulsa $113,904.49. (DSMF ¶¶ 10-11.)

Tulsa filed a two-Count Complaint on March 16, 2018. Count I sought Judgment in the amount of $113,904 against JT's Market, Inc. for goods sold and delivered, but not paid for. Count II alleged that Thyng personally guaranteed that he would pay the debts of JT's Market, Inc. to Tulsa, and requested Judgment against Thyng individually in the same amount. On April 4, 2018, JT's Market and Thyng answered the Complaint and counterclaimed for unjust enrichment and quantum meruit in the amount of $10,000. Steven Perrault of Tulsa, to whom Thyng allegedly made the personal guaranty, died on April 13, 2018. (DSMF ¶ 13.) Tulsa never amended its Complaint.

On December 14, 2018, the parties stipulated to, and the court ordered, Judgment in the amount of $113,904 plus interest and costs for Tulsa on Count I of its Complaint against JT's Market. JT's Market and Thyng's counterclaims against Tulsa were dismissed with prejudice. Only Count II against Thyng individually regarding his alleged personal guaranty to Tulsa remains. Thyng moved for summary judgment on January 16, 2019. Tulsa responded and the court heard oral argument by video hearing on April 24, 2019.

---

[3] In the Complaint, Thyng's alleged statement is: "Steve, I have money in my personal account. If Buck's Market won't pay you, I'll pay you out of my personal account."

3

## DISCUSSION

Summary judgment is appropriate if, reviewing the evidence in the statements of fact and record references in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(a), (c); *Platz Assocs. v. Finley*, 2009 ME 55, ¶ 10, 973 A.2d 743 (internal citations omitted). A fact is material if "it has the potential to affect the outcome of the suit." *Id.* "A genuine issue of material fact exists when the fact finder must choose between competing versions of the truth." *Id.* To withstand a motion for summary judgment, the non-moving party must present sufficient admissible evidence to establish a prima facie case for each element of the claim or defense. *Watt v. UniFirst Corp.*, 2009 ME. 47, ¶ 21, 969 A.2d 897. This evidence must be admissible at trial. M.R. Civ. P. 56(e).

A guaranty is "[a] promise to answer for the payment of some debt, or the performance of some duty, in case of the failure of another who is liable in the first instance." Guaranty, Black's Law Dictionary, (10th ed. 2014). The Statute of Frauds requires some promises to be in writing in order to be enforceable. *See* 33 M.R.S. § 51. Specifically, no action shall be brought on a promise to pay for the debt of another unless the promise or agreement "is in writing and signed by the party to be charged . . . ." § 51(2). Despite the Statute of Frauds, caselaw recognizes exceptions for certain types of oral promises that take them outside the Statute of Frauds so that they no longer have to be in writing to be enforceable.

This court has no doubt that, as a matter of law, Thyng's alleged statement to Steven Perrault that "I have money in my personal account. If Buck's Market won't pay you, I'll pay you out of my personal account," establishes a prima facie claim of a personal guaranty. In that statement, Thyng allegedly promised to personally pay for the debt of another, Buck's Market. Although this alleged statement is an out-of-court statement

4

offered for the truth of the matter, it would have been admissible as non-hearsay under M.R. Evid. 801(d)(2)(A) as an admission offered by a party opponent, if Steven were alive and able to testify at trial. At oral argument, the parties agreed that since Steven's passing in April 2018, the alleged statement is now hearsay and is not admissible under any exception.

In his Motion for Summary Judgment, Thyng argues his alleged personal guaranty is barred by the Statute of Frauds as a promise to pay for the debt of another, or alternatively, as an agreement not to be performed within one year. He further argues that no exception to the Statute of Frauds applies. He maintains that Steven's statement is inadmissible hearsay and, therefore, cannot be relied upon at trial or for purposes of his Motion for Summary Judgment.

In its Objection to Summary Judgment, Tulsa asserts that Thyng's alleged statements to Keith and Steven,[4] and to Kim,[5] are the bases for Count II of its Complaint. Tulsa maintains that although Count II is based upon Thyng's representation to Steven, the Count is "broad enough to encompass representations of Thyng to [Keith and Kim.]" Tulsa argues that the "main purpose" exception to the Statute of Frauds applies so no writing is necessary to maintain the action, and it additionally asserts that there are genuine issues of material fact precluding summary judgment.

In response, Thyng argues that Tulsa's attempt to advance the case on these "new" alleged oral guaranties is an improper attempt to amend the Complaint beyond the

---

[4] "You won't have to worry about getting paid. I'll be able to rotate deliveries. I'll be paid and you'll get paid."

[5] For Tulsa to continue billing as they had been, and that Thyng was going to try to get a loan to pay Tulsa's account current. These statements to Kim were first raised in Tulsa's opposition to Thyng's Motion for Summary Judgment.

5

deadline established in the Standard Scheduling Order.[6] He argues these alleged oral guaranties are not within the essence of the Complaint, but instead amount to new causes of action.

At the outset, this court must determine whether the statements Tulsa now alleges in support of its personal guaranty claim, are actually personal guaranties as a matter of law. Both Black's Law Dictionary and the Statute of Frauds describe a personal guaranty as a promise to pay for the debt of another.

## A. Thyng's Alleged Statement to Keith and Steven.

Thyng allegedly told Keith and Steven that he was buying Buck's Market and said "You won't have to worry about getting paid. I'll be able to rotate deliveries. I'll be paid and you'll get paid." This statement is alleged in paragraph 8 of its Complaint. In this statement there is no mention of a third party. In fact, Tulsa asserts that Thyng "never told anyone from Tulsa he would be operating under the name of JT's Market or that he would operate as a corporation."[7] Viewing this statement on its face, there is no promise, express or implied, to pay for the debt of another. Therefore, as a matter of law, it cannot be a personal guaranty.

This case presents different circumstances than other cases that have addressed alleged oral guaranties. The existence of a third party must be known to the contracting parties for a personal guaranty to exist, otherwise there is no way for a defendant to promise a plaintiff that he would pay for the debt of another. *See Graybar Elec. Co. v.*

---

[6] The Standard Scheduling Order dated April 17, 2018 provided a four month window from that date for parties to file motions to amend the pleadings. August 17, 2018 was the deadline for the filing of a motion to amend the Complaint.

[7] PASMF ¶ 4.

*Sawyer*, 485 A.2d 1384 (Me. 1985) (a jury could rationally find that an oral guaranty existed where the defendant made oral promises to pay a business's account if the business did not; the defendant said he "would take care of" any problems with payment the business had; and, where the plaintiff wrote to the defendant memorializing the personal guaranty); *Fitzgerald v. Hutchins*, 2009 ME 115, 983 A.2d 382 (summary judgment inappropriate in a breach of oral contract case where the defendant had authority to act as an agent for a corporation (that the plaintiff was aware of) but plaintiff alleged the defendant was acting in his individual capacity when he made the alleged contract with plaintiff).

Here, the statements of Thyng that Tulsa would not have to worry about getting paid because he would be paid, and, therefore they would be paid, is devoid of any promise to pay for the debt of another. Tulsa does not put forth facts showing Thyng promised to personally pay the debt if Buck's Market failed to do so. *See Lewiston Daily Sun v. Vill. Netmedia*, No. CV-12-171, 2013 Me. Super. LEXIS 25, at *6 (Feb 13, 2013) (granting defendant's motion to dismiss plaintiff's breach of oral guaranty claim because "[t]he statement 'you will get paid' contains no suggestion that [defendant] himself would pay the debt" for another.).

### B. Thyng's Statement to Kim.

Tulsa asserts that after Kim became aware that Buck's Market's account was being paid by a check from JT's Market Inc., she asked Thyng if he wanted the billings to go to JT's Market instead. Thyng told her to "continue as they were doing." (PASMF ¶ 5.) Not only does this statement not contain any promise to pay for the debt of another, it contains no discussion of a debt whatsoever. Subsequently, in October 2017, Thyng told Kim "he was working to get a loan with which he would pay his account up to date." (PASMF ¶ 8.) Unlike Thyng's former statement to Kim, this statement does include a discussion

7

of the money owed to Tulsa. "Working to get a loan," however, does not amount to a promise to pay a debt. Moreover, even if it did, there was no mention of Thyng stating that he would *personally* pay for the debt of another person or corporation. Because of this, similar to the statement above, neither of Thyng's statements to Kim amount to a personal guaranty as a matter of law.

Tulsa has not put forth evidence, viewed in the light most favorable to it, that would be admissible at trial to establish a prima facie claim of a personal guaranty. Therefore, because Tulsa has not met its burden, the court grants summary judgment to Thyng on Count II.

At oral argument on the Motion for Summary Judgment, Tulsa suggested that its Complaint could be construed as alleging a breach of contract claim against Thyng, as opposed to a claim that he had made a personal guaranty for the debt of another. Count II of Tulsa's complaint unequivocally describes a cause of action for the personal guaranty by Thyng for the debt of JT's Market, Inc.. It does not allege a cause of action for breach of an oral contract with Thyng in his individual capacity. This court does not comment on whether Tulsa, in its initial Complaint or in an amended complaint after Steven passed away, may have advanced a different cause of action based on the facts of the case, but notes that although Maine's notice pleading standard "may be forgiving," it does not allow a party to "shift his cause of action at any point in the proceedings." *Burns v. Architectural Doors & Windows*, 2011 ME 61, ¶ 21, 19 A.3d 823. Here, Tulsa has never brought a cause of action for breach of contract against Thyng, which distinguishes this case from *Fitzgerald v. Hutchins*, 2009 ME 115, 983 A.2d 382.

8

## CONCLUSION

The entry is:

Defendant's Motion for Summary Judgment is GRANTED.

The Clerk is directed to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated: _May 1, 2015_

_____
Justice William R. Stokes
Superior Court